ATWOOD TRANSPORT COMPANY, ET AL. V. COMMONWEALTH OF VIR-
GINIA AND S. W. RAWLS, INCORPORATED.

September 14, 1955.

Record No. 4389.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Christian, Barton, Parker & Boyd,* for the appellants.

*Walter E. Rogers* and *A. E. S. Stephens,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

S. W. Rawls, Incorporated, hereinafter referred to as Rawls, made an application to the State Corporation Commission for a certificate of public convenience and necessity as a petroleum tank truck carrier.* It asked to be allowed to distribute petroleum products from Norfolk and South Norfolk, Virginia, to Emporia, Capron, Franklin, Smithfield and Suffolk, Virginia, and points in the counties of Nansemond, Isle of Wight, Southampton, Surry, Sussex and Greensville, Virginia. Notice of the application and the date of the hearing thereon were duly given to every petroleum tank truck carrier operating in the above mentioned territory. At the hearing, Atwood Transport Company and M. & L. Distributors, Incorporated, and seventeen other holders of certificates as petroleum tank truck carriers in Virginia, hereinafter referred to as appellants, appeared in opposition to the awarding of the certificate.

After hearing the evidence, the Commission, being of opinion that the proposed operation by Rawls was justified by public convenience and necessity, granted the requested certificate. Appellants applied for and obtained this appeal as of right.

Two questions are presented for our determination. The first is raised by the motion of Rawls to dismiss the appeal as improperly awarded, on the ground that this Court is without jurisdiction either to entertain the petition for, or to allow the appeal. The second question relates to the merits. The appellants contend that no necessity was shown for granting the certificate to Rawls.

## I

The first question involves the consideration of Code, §§ 56-338.25 and 56-338.32, 1954 Cumulative Supplement, Code of 1950.

"§ 56-338.25. As to petroleum tank truck carriers, the provisions of this chapter shall be controlling, and no laws in conflict herewith, or inconsistent herewith, shall have any application to such carriers."

"§ 56-338.32. From any order of the Commission imposing any

---

* Petroleum Tank Truck Carriers' Act, Chapter 12.2 of Title 56, §§ 56-338.19 to 56-338.39, inclusive, 1954 Cumulative Supplement Code of Virginia, 1950, Acts 1952, Chapter 632.

fine or refusing, suspending, revoking, altering or amending any certificate, the certificate holder shall have the right of appeal to the Supreme Court of Appeals of Virginia, as a matter of right, as in other cases of appeals from the Commission."

In support of its contention, Rawls points out that under § 56-338.25, the provisions of Chapter 12.2 of Title 56 of the Code, the Petroleum Tank Truck Carriers' Act, are made controlling as to petroleum tank truck carriers, and that § 56-338.32, dealing with appeals arising under the Act, specifically enumerates the type of orders from which appeal is permitted, but makes no provision for an appeal from an order *granting* a certificate. It further points out differences between the provisions of Chapter 12.2 of Title 56 and those of Chapters 12 and 12.1 of Title 56, respectively, entitled "Motor Vehicle Carriers Generally," and "Household Goods Carriers." It then argues that the failure of § 56-338.32 to specify the right of an appeal from an order *granting* a certificate and the differences between the provisions of the Code chapters mentioned make it evident that the legislature did not intend that an appeal should be allowed, except in the instances specified.

Upon a careful consideration of the language and provisions of § 56-338.32, we are of opinion that the section allows appeals to "the certificate holder;" that is, to the holder of a certificate who has been fined, to an applicant who has been refused a certificate, and to the holder of a certificate whose certificate has been suspended, revoked, altered or amended. An order "refusing" a certificate must refer to an order denying a certificate to an applicant. Evidently the draftsmen of the section, by unartful language, sought to expressly allow an appeal to the particular party before the Commission who was aggrieved by its order. There was no need for such allowance to an applicant who had been granted a certificate. The section does not, expressly or by implication, take away from any other party in interest, or any party aggrieved by the order of the Commission the right of appeal as provided by the general law, whether the order grants or refuses the certificate, or suspends, revokes, alters or amends one already granted. The last words of the section recognize that there may be "other cases of appeals from the Commission."

The intention of the legislature with respect to appeals from the orders and findings of the State Corporation Commission is ex-

pressed in clear and unambiguous language in Code, §§ 12-63 and 12-63.1, which, respectively, read as follows:

"§ 12-63. Appeals generally.—The Commonwealth, any party in interest or any party aggrieved by any final finding, order, or judgment of the Commission shall have, of right, regardless of the amount involved, an appeal to the Supreme Court of Appeals, * * *."

"§ 12-63.1. Appeal from any order or decision.—An appeal shall lie from any order or decision of the Commission to the Supreme Court of Appeals at the instance of the applicant or any party in interest. * * *"

The provisions of § 56-338.32 are supplementary to the broad provisions of §§ 12-63 and 12-63.1, which give an appeal of right to "any party in interest or any party aggrieved by any final finding, order, or judgment" of the Commission at the instance of the applicant, provided the appeal be taken and perfected within a prescribed time. The repeated use of the word "any" throughout the two sections clearly and comprehensively expresses the extent of the rights allowed therein. No language could be broader than "any party" and "any final finding, * * *."

It is true that there are differences between the provisions of the hereinbefore mentioned Acts; but the differences relate to the nature of the subjects involved and the character of the operations in which the carriers are involved. It is also true that § 56-338.7 of the Household Goods Carriers' Act provides for appeals in accordance with the provisions of Code, §§ 12-63 and 12-64, and § 56-338.13 of the same Act provides for appeal in specified cases, while no reference is made in the Petroleum Tank Truck Carriers' Act to Code, §§ 12-63 and 12-64; but that does not aid us other than to show the public policy of the State with regard to appeals from the orders and findings of the State Corporation Commission.

Section 56-338.25 does not deny rights conferred by other statutes except where the latter may be in conflict therewith, or inconsistent therewith, and we find nothing in the language of § 56-338.32 which is in conflict or inconsistent with the provisions of §§ 12-63 and 12-63.1. The motion to dismiss is without merit.

## II

We turn now to the contention of the appellants, relating to the merits of the case. The evidence may be summarized as follows:

S. W. Rawls, Incorporated, has since 1948 been a seller and distributor of petroleum products. It was organized to take over the same business formerly operated by S. W. Rawls, individually, for a long period of years. The corporation operates plants at Franklin, Smithfield and Emporia, leased from the Gulf Oil Company. From these plants it sells and distributes gasoline, fuel oil, and kerosene, supplied to it by the Gulf Oil Company, hereinafter referred to as Gulf. It purchases some and some it sells on commission. Title to the products sold on commission remains in Gulf; but Rawls assumes responsibility for and guarantees all sales made on credit, which have not been specifically approved by Gulf. In addition, Rawls stores in its tanks light fuel oil which it has purchased and delivers it therefrom to customers as sales are made. It also purchases certain heavy fuel oil which it delivers directly to its customers from the suppliers' plants.

Prior to the enactment of the Petroleum Tank Truck Carriers' Act, all of the petroleum products handled through the storage plant owned by Rawls were transported to such plants and from them to Rawls' customers in equipment owned and operated by it. Heavy fuel oils delivered directly from the supplier to the consumer, both that purchased outright by Rawls and that sold by it on commission, were transported for Rawls by M. & L. Distributors, Inc. Later upon complaints by some of Rawls' customers that they were not getting satisfactory service in the delivery of that type of oil, Rawls purchased equipment to enable it to make direct distribution and delivery, both from its plants and from its suppliers, to its customers as and when ordered and required. A question then arose whether it could transport directly to its customers oil products not distributed from its own storage facilities without a certificate of convenience and necessity, and Rawls applied for such a certificate.

Representatives of oil customers in the territory affected testified that the services rendered by the existing certificate holders did not meet their needs. Industrial users complained of late deliveries after business hours and of variations in service both in point of time and quantity. It was stated that schools requiring fuel oil in winter had not been adequately served. Several witnesses declared that the public convenience would be served by having Rawls make direct delivery to its customers.

Appellants, on the other hand, presented evidence that they had sufficient equipment to efficiently handle and transport all of the

petroleum products necessary in the area in question. They presented a number of letters from customers stating that the service rendered by M. & L. Distributors, Inc., was entirely satisfactory. Some of the appellants do not operate in the territory involved; but nevertheless appeared on behalf of the certificate holders who were directly affected.

Prior to the enactment of the Petroleum Tank Truck Carriers' Act, motor carriers transporting petroleum products for hire received a permit under provisions of Article 3, Chapter 12, Title 56 of the Code. The permits were issued without proof of public convenience and necessity upon the filing of an application and the necessary insurance. The newly enacted Act provided that all carriers engaged in the business of transporting petroleum products, as therein defined, during the year ending December 31, 1951, should be entitled to certificates if application was made within a specified time. § 56-338.33. Under the evidence, Rawls would have been entitled to a certificate under the Act without the necessity of a hearing had it applied within the prescribed time limit.

Appellants' objection to the granting of the certificate to Rawls is based on the grounds that it was not shown that the service rendered by the existing certificate holders was inadequate for the requirements of the public convenience and necessity, and that the addition of another certificate holder would reduce their income. They cite our decisions in the cases of *Lee Compton Lines, Inc.* v. *Commonwealth*, 192 Va. 411, 65 S. E. (2d) 515 and *S. A. L. Railroad Co.* v. *Commonwealth*, 193 Va. 799, 71 S. E. (2d) 146.

The answer to the contention of the appellants is found in the peculiar provisions of § 56-338.29 as applied to the evidence. That section reads as follows:

"(a) Upon the filing of an application for a certificate of public convenience and necessity as a petroleum tank truck carrier, the Commission shall, within a reasonable time, fix a time and place of hearing of such application. If the Commission shall find the proposed operation justified by public convenience and necessity, it shall issue a certificate to the applicant, subject to such terms, limitations and restrictions as the Commission may deem proper. If the Commission shall find the proposed operation not justified, the application shall be denied.

"(b) In determining whether or not the proposed operation is justified the Commission may consider, among other things, the

public safety, the public necessity for the proposed operation, the volume and character of traffic on the applicant's proposed route or routes, especially the existing volume of petroleum products transportation thereon, and the condition of the highways involved in the proposed operation."

The provisions of this section are materially different from those of § 56-281, with which section we were dealing in *Lee Compton Lines, Inc.* v. *Commonwealth, supra,* and *S. A. L. Railroad Co.* v. *Commonwealth, supra.* In each of those cases the Commission refused to issue a certificate to "an applicant proposing to operate over the route of another holder of a certificate" as a common carrier of property by motor vehicle. Section 56-281 provides that in such an instance no additional certificate shall be granted unless and until the Commission shall find that the service of the existing certificate holder is "inadequate to the requirements of the public necessity and convenience," and if the service is inadequate, the certificate holder shall be given reasonable time and opportunity to remedy such inadequacy before any certificate shall be granted to an applicant proposing to operate over his route.

No such provision is found in the Petroleum Tank Truck Carriers' Act. That Act merely provides that if the Commission "find the proposed operation justified by public convenience and necessity it shall issue the certificate to the applicant, subject to such terms * * * as the Commission may deem proper." In determining that question, the Commission may consider, among other things, "the public safety, the public necessity for the proposed operation, the volume and character of traffic on the applicant's proposed route or routes, especially the existing volume of petroleum products transportation thereon, and the condition of the highways involved in the proposed operation."

Thus, § 56-338.29 (b) points out dangers to be guarded against and the interests to be served. It contains no express provisions as to adequacy of service, and none on the subject of competition from existing carrier service, as are found in § 56-281. The Petroleum Tank Truck Carriers' Act is a liberal statute. All that is required to be shown by the applicant for a certificate is that the proposed operation is "justified by the public convenience and necessity." It was apparently enacted to insure that every part of the State should have a complete and satisfactory supply of petroleum products, such as gasoline and fuel oil at all times. The fact that exist-

ing certificate holders might be able to provide this service is not of material significance, nor that such holders might suffer from competition by the granting of additional certificates of prime importance. The public convenience and necessity is of paramount consideration.

The principles which govern a review of the order and finding of the State Corporation Commission have often been stated. The findings of the Commission must be regarded by us as *prima facie* just, reasonable and correct, and can not be upset in the absence of a showing of an abuse of the discretion vested in it by statutory and constitutional provisions. Constitution of Virginia, § 156 (f). *Petersburg, etc., Railway Company* v. *Commonwealth*, 152 Va. 193, 200, 146 S. E. 292.

In dealing with the discretion vested in the Commission, in *Jessup* v. *Commonwealth*, 174 Va. 133, 142, 5 S. E. (2d) 482, we said:

"The Commission is vested with wide discretion in the issuance of certificates of public convenience and necessity and in the supervision of transportation by all common carriers. The judgments of the Commission are presumed to be correct."

In *Petersburg, etc., Railway Company* v. *Commonwealth, supra,* in considering the meaning of "public convenience and necessity," we cited with approval *In re Walter M. Aldrich*, decided by the New York Public Service Commission, and reported in P. U. R. 1923 A, p. 385, wherein this was said:

"In the phrase 'public convenience and necessity' the word 'necessity' means that which is needful, essential, requisite or conducive to 'public convenience.' When more convenient and adequate service is offered to the public, it would seem that necessity requires such public convenience should be served." 152 Va. 203.

In *S. A. L. Railroad Company* v. *Commonwealth, supra,* 193 Va. page 806, we cited *Union Pacific R. Co.* v. *Public Service Commission,* 103 Utah, 459, 135 P. (2d) 915, 917, in which this was said:

"Necessity means reasonably necessary and not absolutely imperative. * * * The convenience of the public must not be circumscribed by holding the term 'necessity' to mean an essential requisite. * * * It is necessary if it appears reasonably requisite, is suited to and tends to promote the accommodation of the public. * * *"

As the Commission stated in its opinion, the fact that Rawls had served its customers within the territory involved for so many years clearly indicated that there was a public need for the continuation

of its service. The evidence presented also supported the conclusion that such continued service will make the public use more convenient. The order appealed from is, therefore, affirmed.

*Affirmed.*