# Richmond

PETROLEUM TRANSIT CORPORATION OF VIRGINIA V. COMMONWEALTH OF VIRGINIA, EX REL., ETC.

OIL TRANSPORT, INCORPORATED V. RUDOLPH D. STEWART.

April 24, 1961.

Record Nos. 5221, 5222.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Calvin F. Major* and *William M. Blackwell* (*John C. Goddin; Shewmake, Gary, Goddin and Blackwell,* on brief), for appellant, Petroleum Transit Corporation of Virginia.

*Gordon F. Marsh,* for appellee, Commonwealth.

*Edward L. Breeden, Jr.; Edward L. Breeedn, III; Breeden, Howard and MacMillan,* for appellant, Oil Transport, Incorporated.

*Gordon F. Marsh*, for appellee, Rudolph D. Stewart.

*Robert T. Barton, Jr.* and *Christian, Barton, Parker and Boyd*, for Virginia Tank Truck Carriers Association, amicus curiae.

BUCHANAN, J., delivered the opinion of the court.

Rudolph D. Stewart and Reliable Transport of Virginia, Incorporated, on January 23, 1960, filed their application to the State Corporation Commission seeking its approval of the transfer by Stewart to Reliable of a certificate of public convenience and necessity as a petroleum tank truck carrier, owned by Stewart and issued to him by the Commission on September 15, 1952, under the provisions of Chapter 12.2 of Title 56 of the Code.

After the required notices were given the Commission heard testimony on April 12, 1960, and entered its order approving the transfer for reasons stated in an opinion by Commissioner Hooker, concurred in by Commissioner Dillon and dissented from by Commissioner Catterall. Petroleum Transit Corporation of Virginia and Oil Transport, Incorporated, appeared at the hearing as objectors and have appealed from the order of the Commission. Virginia Tank Truck Carriers Association also appeared as an objector and has filed a brief *amicus curiae* in this court. They contend that the Commission's order was without any evidence to support it, and Petroleum Transit additionally asserts that it constituted an arbitrary and unreasonable exercise of and abuse of the Commission's authority and discretion.

The oral evidence before the Commission consisted only of the testimony of the applicants. The objectors offered none.

Stewart's certificate gave him the right to transport petroleum products from South Norfolk "and from such additional point or points of origin as the subsequent transfer of [his] source of supply may require." By supplements granted by the Commission he was given the additional origin points of Broadmoor in 1955, and American Oil Refinery, near Yorktown, on January 20, 1960. The latter was a new plant and by agreement all petroleum carriers were granted the right to haul from that point.

Stewart testified that at the time his certificate was issued in 1952 he owned two tank trucks and later three; that he leased one of his tractors to Turner Express Company in the summertime when

business was slack. He has hauled for some eight suppliers in his territory and used his equipment to the extent that he had business, but the whole hauling business had been bad, including the fuel oil business. The month of March last year, when there was so much snow, had been their only good month. There was, he said, plenty of idle equipment, "I can show you yards full of it." He had not used his Yorktown permit and did not have the proper equipment to do so. His equipment was not included in the transfer and he expects to use it in local hauling. He had been negotiating with Reliable for the sale and transfer of this permit for several years but had not been able to reach an agreement until he obtained the Yorktown permit.

Reliable's president and treasurer testified that his equipment had been approved, all requirements had been met, and his company was fully qualified and able to handle the business if the transfer was granted. In December, 1959, Reliable had applied for a certificate to haul petroleum products from Broadmoor and other points, not including Yorktown, but it expected to abandon that application if this transfer was granted. Reliable had been trying to buy Stewart's certificate for several years and it was only after Yorktown was added that they could agree on the price. During these negotiations Stewart had attempted to get additional capital to enlarge his operations, as his equipment was too small for successful over-the-road business.

The Commission took note of the fact that there were thirteen certificates from Norfolk, nine from Portsmouth and twenty from South Norfolk.

The Commission points out in its opinion that the transportation of petroleum is a seasonal business which requires more equipment in cold weather than at other times, and the carrier which has sufficient equipment to serve its customers during the cold months will necessarily have idle equipment in warm weather; that this was the experience of the objectors as well as of Stewart, and the fact that a carrier has not had much business does not establish that his service is not needed, and furnishes no adequate reason for denying the transfer of his certificate; that the purpose of the law was to insure that every part of the State should have a complete and satisfactory supply of petroleum products, such as gas and fuel oil, at all times; that in the transfer of certificates the Commission was vitally concerned with whether the transferee is as capable of adequately serving the public as the transferor, and that it could not be

questioned in this case that Reliable is in a much better position financially and more adequately equipped to serve the public convenience and necessity than is Stewart.

The Commission noted that it had never refused to approve the transfer of a "grandfather certificate"; that "no one at all testified against the transfer of this Certificate at the hearing," and that it felt fully justified in entering the order granting the transfer.

The Petroleum Tank Truck Carrier's Act was enacted in 1952, Acts 1952, ch. 632; four of its sections were amended by Acts 1956, ch. 450, and as amended is now codified as § 56-338.19 through § 56-338.38 of the Code. The following are the sections with which we are here concerned:

Section 56-338.33, known as the "Grandfather Clause," under which Stewart's certificate was issued, provides that a person who was engaged in the business of transporting petroleum products during the year 1951 "shall be issued by the Commission a certificate of convenience and necessity as a petroleum tank truck carrier" if he makes application therefor in the time prescribed, which certificate shall authorize him to continue such transportation from the point or points of origin which were used by him at any time prior to the enactment of the law, "and from such additional point or points of origin as the subsequent transfer of such carrier's source of supply may require."

Section 56-338.34 provides that any such certificate may be transferred, leased or amended if the Commission finds, after notice and hearing, that the transfer, lease or amendment "will serve the public convenience and necessity, * *."

In *Atwood Transport Co.* v. *Commonwealth*, 197 Va. 325, 88 S. E. 2d 922, a certificate was issued not under the "Grandfather Clause" but under § 56-338.29, which provides that the Commission shall issue such certificate if it shall find the proposed operation "justified by public convenience and necessity." We there pointed out that the provisions of this section were materially different from § 56-281, relating to motor vehicle carriers generally, and dealt with in *Lee Compton Lines, Inc.* v. *Commonwealth*, 192 Va. 411, 65 S. E. 2d 515, and *S. A. L. Railroad Co.* v. *Commonwealth*, 193 Va. 799, 71 S. E. 2d 146. We said that § 56-338.29 points out the dangers to be guarded against and the interests to be served; that it contains no express provisions as to adequacy of service and none on the subject of competition from existing carrier service; that it is a liberal statute

and all that is required to be shown by the applicant [under that section] is that the proposed operation is justified by public convenience and necessity. "The fact that existing certificate holders might be able to provide this service is not of material significance, nor that such holders might suffer from competition by the granting of additional certificates of prime importance. The public convenience and necessity is of paramount consideration." 197 Va. at pp. 331-2, 88 S. E. 2d at 927.

Under § 56-338.33 it was not necessary for Stewart to show that his operation was "justified by public convenience and necessity." The fact that he was operating in 1951, prior to the passage of the Act, exempted him from making such showing, and equipped him with a legislative finding that his operation was justified by public convenience and necessity, on the basis of which alone the Commission was required to issue to him a certificate of convenience and necessity as a petroleum tank truck carrier.

Once isued this certificate could not be suspended, revoked, altered or amended unless the Commission should find, after notice and hearing, that the holder knowingly misrepresented a material fact in obtaining it, or willfully violated or refused to observe any of the laws of this State touching his certificate, or any of the proper orders, rules or regulations of the Commission, or any of the terms, conditions or limitations of his certificate. § 56-338.31.

Section 56-338.34 provides that this certificate may be transferred if the Commission finds that the proposed *transfer*, not the proposed *operation*, will serve the public convenience and necessity. Inherent in this certificate is the legislative declaration that it does serve the public convenience and necessity in the hands of Stewart. Regardless of the certificates held by the appellants and others, and of whether their equipment and capabilities are sufficient to serve present and potential customers, Stewart is entitled under his certificate to continue his operations until he loses his right in some way specified by the statute. He has tried to obtain capital for these operations, and if he had done so he could have operated under his certificate as his transferee proposes to do.

The only evidence against the transfer of this certificate was that elicited by cross-examination of the applicants to the effect that the petroleum transportation business was bad, and there was plenty of idle equipment around; from which it is argued that the conclusion should be reached that the public need was sufficiently served by

Stewart's competitors. The fitness of Reliable, with respect to finances, equipment or otherwise, was not questioned.

The appellants insist that there was no evidence before the Commission that the transfer of this certificate will serve the public convenience and necessity. To the contrary, the certificate owned by Stewart within itself furnished evidence, supplied by the statute, that operations under it were justified by public convenience and necessity. The burden was on the objectors to show, for whatever reason they could establish by evidence, that the *transfer* of this certificate to Reliable would not serve the public convenience and necessity. As the Commission stated, no one at all testified against the transfer and so the Commission found, on the evidence before it, that the transfer would serve the public convenience and necessity. This finding "must be regarded by us as *prima facie* just, reasonable and correct, and can not be upset in the absence of a showing of an abuse of the discretion vested in it by statutory and constitutional provisions." *Atwood Transport Co.* v. *Commonwealth, supra,* 197 Va. at 332, 88 S. E. 2d at 927.

No such showing was made in this record and the order of the Commission is accordingly affirmed.

*Affirmed.*