## Richmond

OIL TRANSPORT, INC., ET AL. v. GREEN MOTOR LINES, INC., ET AL.

June 14, 1965.

Record No. 5976.

Present, All the Justices.

*Edward L. Breeden, III* (*Edward L. Breeden, Jr.; Breeden, Howard & MacMillan*, on brief), for the appellants.

*J. Vaughan Gary* and *Donald M. Schubert* (*Shewmake, Gary, Goddin & Blackwell; Elmore & Belcher*, on brief), for the appellees.

GORDON, J., delivered the opinion of the court.

This controversy involves certificates of public convenience and necessity issued, before this proceeding was begun, by the State Corporation Commission under the Petroleum Tank Truck Carriers' Act (Chapter 12.2, Title 56, §§ 56-338.19 *et seq.*, Code of Virginia of 1950). That Act forbids the operation of motor vehicles by petroleum tank truck carriers for the transportation of petroleum products for compensation on the Virginia highways, except in accordance with the provisions of the Act. (See Code of Virginia of 1950, § 56-338.21)

To comply with the Petroleum Tank Truck Carriers' Act, a carrier must obtain a certificate of public convenience and necessity from the State Corporation Commission under Code § 56-338.29, unless its operations are interstate or intracity or another exemption provided in the Act is available. As required by the Act, each certificate issued by the Commission designates the point of origin, that is, the place at which the tank truck carrier may obtain the petroleum products to be transported by it.

This proceeding was initiated before the State Corporation Commission by Oil Transport, Inc. and four other petitioners, all of whom are now appellants. When the petition was filed, they held certificates designating Craney Island (located in Norfolk County, when the certificates were issued) as the point of origin. The interveners before the Commission, who are appellees here, held certificates designating Broadmoor (also in Norfolk County) or South Norfolk (an independent city) as the point of origin.

After the certificates were issued and before this proceeding was initiated, a new city was formed by the consolidation of the County of Norfolk and the City of South Norfolk into the City of Chesapeake. As a result of the consolidation, the County of Norfolk and the City of South Norfolk ceased to exist as political subdivisions, and the points of origin named in the certificates—Craney Island, Broadmoor and South Norfolk—now are within the corporate limits and are parts of the newly-formed City of Chesapeake.

In their petition to the Commission, Oil Transport, Inc. and the other petitioners (who, as already mentioned, held certificates designating Craney Island as the point of origin) alleged that other petroleum tank truck carriers had asserted their rights to originate petroleum cargoes from Craney Island; that these other carriers (who became interveners in this proceeding), whose certificates did not

designate Craney Island as the point of origin, but designated other points in the former County of Norfolk or designated the former City of South Norfolk, based their claim of right to obtain petroleum from suppliers on Craney Island because of the inclusion of Craney Island in the City of Chesapeake. The petitioners prayed for a final determination by the Commission of their rights as holders of certificates designating Craney Island as the point of origin.

The Commission, after notice and hearing, entered the order dated May 27, 1964, from which this appeal was prosecuted. The text of the order, except for the preamble and conclusion and notation of the dissent of Commissioner Catterall, is: "IT IS ORDERED: That by the inclusion of Craney Island within the corporate limits of the new City of Chesapeake that Craney Island is now a part of the origin point of Chesapeake and shall hereafter be so considered under the provisions of Chapter 12.2, Title 56 of the Code of Virginia."

It is clear from a reading of the majority opinion, if not from the text of the order set forth in the preceding paragraph, that the Commission intended to declare that the certificate holders who were before the Commission in the proceeding, whose certificates designated points within former Norfolk County or designated former South Norfolk, now hold certificates designating the City of Chesapeake, including all points within that city, as the point of origin. The question in issue, according to the majority opinion, is whether Craney Island, Broadmoor and South Norfolk are now one point or three different points, insofar as the existing certificates are concerned.

The majority of the Commission reasoned that, since the City of South Norfolk no longer exists, it must follow that South Norfolk is abolished in the certificates naming that city as the point of origin, and the City of Chesapeake is substituted as the point of origin. And, in the opinion of the majority, the same considerations are applicable to Craney Island and Broadmoor. Accordingly, in the opinion of the majority, the Commission should declare by its order that "All carriers will have identical authority to obtain oil from any supplier within the City of Chesapeake", subject to the right of the city to require its authorization if any intracity service is performed.

The majority opinion referred, in support of its conclusion, to a policy of the Commission, unbroken since the adoption of the Petroleum Tank Truck Carriers' Act: Its policy to designate an entire city, instead of points within the city, as the point of origin,

when issuing certificates authorizing the obtaining of petroleum products from a supplier located at any point within the city. Reasons for the adoption of this policy and the Commission's adherence to the policy are given in the majority opinion, and these reasons will be mentioned later in this opinion.

Commissioner Catterall's contrary reasoning, as expressed in his dissenting opinion, is that "certificates that name Craney Island as a point of origin still mean Craney Island"; that the change of the point of origin to the entire City of Chesapeake "cannot properly be accomplished by *interpreting* the existing certificates" and, if the change of the point of origin is to be effected, "a hearing should be held as required by § 56-338.29 for the purpose of determining whether *amending* the existing certificates is justified by public convenience and necessity".

Much attention was devoted, in the briefs and oral argument before us, to the meaning of the word "point", as used in the Petroleum Tank Truck Carriers' Act. The appellants urge that "point", as used in the Act, does not refer to a political subdivision, such as a city, town or county, but (when used with reference to the point of origin) refers to the place where petroleum products are loaded on a tank truck.

We agree with these statements in the Commissioner's dissenting opinion: "The 'point' could be described as a county, city or town or a particular government installation or a named oil refinery. No matter how the point is described, it is described with reference to need found to exist when it was described." The intent of the Act is to give discretion to the Commission in designating the point of origin, in a certificate issued by the Commission, in the light of the public convenience and necessity. In the reasonable exercise of this discretion, the Commission may designate the point of origin as a confined area, such as an oil refinery or a street address, or as an entire city. When the Commission designates a city in a certificate, it is in effect designating "each point within the corporate limits of the city".

Nevertheless, a distinction should be drawn, in interpreting the intent of the Commission in designating a point of origin in a certificate, between a certificate that designates an existing city, on the one hand, and a certificate that designates a refinery or a place or area that is not a political subdivision, such as Craney Island, on the other hand.

If the Commission issues a certificate designating the point of origin as an existing city (such as the City of Chesapeake after its formation), it is quite reasonable to interpret the designation of that city as including "all points within the corporate limits of the city as now drawn (that is, at the time the certificate was issued) *or* as hereafter expanded". See *Truesdale* v. *City of Newport*, 28 Ky. Law Rep. 840, 90 S.W. 589. Moreover, the policy of the Commission to designate an entire city might be relevant, and serve as an aid, in reaching the conclusion that points within the subsequently-expanded limits of the city, which was named in a certificate, were intended to be included as points of origin.

On the other hand, the Commission could not have intended, when it issued a certificate naming Craney Island or Broadmoor or South Norfolk as the point of origin, to designate the City of Chesapeake. That city had not then been conceived. And it is difficult to perceive the relevance of the policy of the Commission—to name an entire city—as an aid in interpreting the words Craney Island or Broadmoor or South Norfolk to mean the City of Chesapeake in the certificates issued by the Commission and involved in this appeal.

To accept the reasoning of the majority of the Commission—that Craney Island, Broadmoor and South Norfolk became one point, by force of the creation of the City of Chesapeake and in view of the past policy of the Commission—would unduly restrict the discretion of the Commission respecting points of origin in certificates of public convenience and necessity, as illustrated in the succeeding paragraph. And a similar case may arise in the future.

If the Commission had found that the public convenience and necessity would be promoted, under the present circumstances, by continuing the designation of Craney Island as the point of origin in the certificates previously issued to the petitioners, and by continuing the designation of Broadmoor and South Norfolk in the other certificates, the Commission in our opinion would have been justified in departing from its past policy in this instance and in refusing to alter the points of origin designated in the several certificates.[1]

---

[1] The creation of the City of Chesapeake had no effect on the identification of the areas "Craney Island" and "Broadmoor"; these areas are as readily identifiable after the consolidation, as before. The area of the City of South Norfolk should be likewise readily identifiable, though South Norfolk is no longer a municipal corporation; but, if not, the Commission could have interpreted the designation of the City of South Norfolk, as referring to the area enclosed within the boundaries of the city immediately before the consolidation.

■ The Commission, by its order now appealed from, effected an amendment of the existing certificates. The designations of Craney Island, Broadmoor and South Norfolk, appearing in the certificates as points of origin, were amended to read the City of Chesapeake.[2] Our proper course of inquiry, then, is whether the Commission had authority in this proceeding to so amend the certificates. If so, its action should be sustained.

Under Code § 56-338.34, set forth in the footnote*, the Commission is granted authority to authorize the amendment, as well as the transfer or leasing, of a certificate issued under the Petroleum Tank Truck Carriers' Act, upon a finding that the amendment will serve the public convenience and necessity. We must determine whether the notice given and the findings made in this proceeding conform to the requirements of § 56-338.34 for an order amending existing certificates.

Subsection (b) of § 56-338.34 requires the Commission to cause the same notice to be given as is required under § 56-338.29 in a proceeding for the original issuance of a certificate, *if* the proceeding under § 56-338.34 involves the sale, transfer or assignment of a certificate. Such notice, as specified in subsection (c) of § 56-338.29 (relating to the original issuance of a certificate), must include publication of notice in a newspaper or newspapers, as well as notice by receipted registered mail to all certified petroleum carriers.

But in a proceeding under § 56-338.34 involving the amendment of a certificate (as distinguished from the sale, transfer or assignment of a certificate), there is no requirement that notice be given as required under § 56-338.29 (see subsection (b) of § 56-338.34, set forth in the footnote below). Hence, notice by publication in a newspaper, as required by § 56-338.29, was not required in this case for the amendment of the existing certificates pursuant to § 56-338.34. In this proceeding, the Commission ordered that notice be given to

---

[2] The Commission's order may properly be interpreted as a declaratory judgment that all certificates involved in the proceeding should be amended so as to designate the City of Chesapeake as the point of origin—this declaration to be implemented by the ministerial act of issuing amended certificates.

* "§ 56-338.34. Transfer, lease or amendment of certificate: Notice required.— (a) Any such certificate may be transferred, leased or amended if the Commission finds, after notice and hearing, that the transfer, lease or amendment will serve the public convenience and necessity, and the Commission may authorize the transfer or lease subject to such restrictions as the Commission finds will promote the public convenience and necessity.

"(b) No certificate shall be sold, transferred, or assigned until notice as required by subsection (c) of § 56-338.29 is properly made or served."

all petroleum tank truck carriers in Virginia by receipted registered or certified mail, and we find this notice ample to enable the Commission to amend the outstanding certificates under § 56-338.34.

The Commission was asked, by the petition filed before it, to determine the rights of other certificate holders, namely the persons who became interveners in the proceeding, to obtain petroleum products from suppliers on Craney Island, and the interveners (as well as the holders of certificates designating points of origin outside of the area in question) were given notice of the proceeding.

The interveners-appellees have made no objection to the Commission's action in enlarging the petitioners'-appellants' point of origin to include all of the City of Chesapeake, instead of Craney Island alone. The sole objection, made by the petitioners, is to the enlarging of the interveners' points of origin so as to include all of the City of Chesapeake, including Craney Island. The petitioners obviously fear increased competition. They assert their ability to serve Craney Island adequately; reference is made in the petitioners' (appellants') brief to the facts that they collectively operate 128 pieces of equipment available for serving Craney Island and have always met the demand for service there, even during the Cuban crisis of 1962.

This leads to a consideration of the remaining question: whether the Commission, after notice and hearing, as required by § 56-338.34, made sufficient findings of public convenience and necessity to support the amendment of the outstanding certificates. In this connection, it is appropriate to refer to the considerations or rules relating to the granting of certificates of public convenience and necessity under the Petroleum Tank Truck Carriers' Act. At the same time, we should bear in mind that this proceeding did not involve the original issuance of certificates, but the amendment of outstanding certificates. The Commission had found, before this proceeding was initiated, that the issuance of certificates to the petitioners and interveners, authorizing them to obtain products from suppliers within the area now under consideration, was consistent with the public convenience and necessity.

Certificates of public convenience and necessity issued under the Petroleum Tank Truck Carriers' Act, unlike certificates issued under certain other acts involving public utilities, are often, probably usually, not exclusive in the territory or from the "point" described

in the certificates.* Moreover, as pointed out in the majority opinion of the Commission in this proceeding, the issuance of a certificate naming an entire city as the point of origin does not mean that the new certificate holder can infringe upon the rights of other carriers. Each carrier (or the person for whom it transports products) must have a contract with the supplier from whom it desires to obtain petroleum products. A certificate issued by the Commission does not require, nor could it legally require, a supplier to do business with the certificate holder.

Furthermore, as pointed out in *Atwood Transport Co.* v. *Commonwealth,* 197 Va. 325, 88 S.E.2d 922, the fact that holders of existing certificates issued under the Petroleum Tank Truck Carriers' Act might be able to provide the service from a given point of origin, or that such holders might suffer from competition, is not of material significance in deciding the question whether a certificate should be issued. The paramount consideration is public convenience and necessity. And these principles were confirmed in *Transit Corporation* v. *Commonwealth,* 202 Va. 716, 119 S.E.2d 494, involving the transfer, pursuant to Code § 56-338.34, of a certificate issued under the Act.

As evidenced by the following language of the majority opinion of the Commission in this case, the Commission considered the public convenience and necessity in reaching its conclusion:

"The need for the service of these carriers is not at the origin point or the actual location of the supplier of petroleum products, but the need is to serve those individual customers to whom such carriers are obligated to furnish petroleum, etc. . . . ."

". . . . . . . . The question always uppermost in the mind of the Commission when passing on these matters is the need of the public. This is the paramount concern of the Commission. It is obvious that the public is benefited when a carrier has the opportunity to secure petroleum products at more than one place."

With respect to the Commission's policy to name an entire city as the point of origin, this is said in the majority opinion:

"This policy has not only worked satisfactorily, but is definitely in the public interest with which the Commission should always be concerned, and, in the opinion of the Commission, is not in viola-

---

* According to the appellants' brief, twenty-eight carriers held certificates issued under the Act at the time of the hearing by the Commission in this proceeding, and nineteen carriers held certificates designating South Norfolk or Broadmoor as the point of origin and five held certificates designating Craney Island.

tion of the terms and conditions of the Tank Truck Carriers' Act, which has been construed to be a liberal statute by the Supreme Court."

In essence, the majority of the Commission found that its policy to designate an entire city, instead of one or more points within a city, as the point of origin was consistent with the public convenience and necessity. Implicit in this finding is the conclusion that the public convenience and necessity did not warrant any change of or exception to the policy, under present circumstances, in the case of the City of Chesapeake. The Commission found, by action of the majority, that all carriers certified to obtain petroleum products at any place within the City of Chesapeake should, consistently with the public convenience and necessity, be authorized to obtain the products from any point within the city. In our opinion, these findings are sufficient to justify the amendment of the outstanding certificates, as effected by the order appealed from.

For the reasons assigned, the order of the State Corporation Commission dated May 27, 1964 is

*Affirmed.*

SPRATLEY, J., concurs in result.