CHARTERED BUS SERVICE, INC., ET AL.

V.

DOMINION COACH COMPANY, ET AL.

Record No. 860196

CHARTERED BUS SERVICE, INC., ET AL.

V.

BRISTOL-JENKINS BUS LINE, INC., ET AL.

Record No. 860477

November 26, 1986

Present: All the Justices

358

*Cecil H. Creasey, Jr. (Ben R. Lacy, IV; Woodward & Lacy, P.C.*, on brief), for appellants. (Record No. 860196)
*Donald M. Schubert; M. Brooks Savage, Jr. (Calvin F. Major; Lewis S. Minter; Goddin, Major, Schubert & Hyman*, on briefs), for appellees. (Record No. 860196)
*Cecil H. Creasey, Jr. (Ben R. Lacy, IV; Sands, Anderson, Marks & Miller*, on brief), for appellants. (Record No. 860477)
° *Donald M. Schubert; M. Brooks Savage, Jr. (Calvin F. Major; Lewis S. Minter; William F. King; Goddin, Major, Schubert & Hyman*, on briefs), for appellees. (Record No. 860477)

COMPTON, J., delivered the opinion of the Court.

We have consolidated for review two appeals of right from the State Corporation Commission which present common questions of law. We decide (1) whether a presumption of continuance of public convenience and necessity attaches to the operations authorized by a special or charter party carrier certificate and (2) whether the Commission may transfer a portion of the operating authority contained within such a certificate upon determining that the proposed transfer is justified by the public convenience and necessity. We answer these queries in the affirmative.

Chapter 12.4 of Title 56 of the Code generally provides that no person, firm or corporation shall engage in the business of a special or charter party carrier of passengers by motor vehicle on any highway within Virginia unless a certificate of public convenience and necessity has been secured from the Commission authorizing such business. Code §§ 56-338.50 and 56-338.52. In general, "special or charter party" means a group movement of passengers transported under a single contract made with one person for an agreed charge. § 56-338.50(d). Pertinent to this appeal is § 56-338.56, which provides

"No certificate may be leased. Any certificate may be transferred if the Commission finds, after such notice and hearing as it deems reasonable, that the proposed transfer is justified by the public convenience and necessity, subject to such

terms, limitations, and restrictions as may be prescribed by the Commission. Any such application shall be made jointly by the transferor and transferee."

In these proceedings, separate holders of "B" certificates, as transferors, jointly applied, with their proposed transferees, to the Commission in 1985 for permission to transfer "a portion" of the respective certificates. The holder of a "B" certificate is authorized "to transport passengers in special or charter parties from any point or points within the territory of origin specified in the certificate to other points" in Virginia. Code § 56-338.53(b). In contrast, an "A" certificate authorizes the holder to transport passengers from any point or points within the Commonwealth to other points in this State. § 56-338.53(a).

After appropriate notices, the Commission held hearings in each case. In one case, ten holders of charter party certificates from the affected geographical area filed a protest against the transfer and eight presented evidence at the hearing. Two other certificate holders from the area appeared as interveners and testified against the transfer. In the other case, ten holders of charter party certificates from the area affected filed protests against the transfer and some presented evidence in support of their protest.

The Commission granted the respective applications by final orders entered in November 1985 and February 1986. Ten protestants in each case have appealed the Commission's rulings and the applicants in each proceeding appear as appellees along with the Commission.

In one case, Dominion Coach Company applied to transfer certain of its operations authorized under its "B" certificate to Laidlaw Transit (VA) Inc. Laidlaw, apparently the largest school bus operator in North America, sought authority to provide special or charter party service from origin points in the Cities of Virginia Beach, Chesapeake, Norfolk, Portsmouth, and Suffolk formerly served by Dominion. In approving the transfer, the Commission found that Laidlaw was "fit and capable of performing the proposed operations and that the application [was] justified by the public convenience and necessity." On appeal, the protestants do not attack the Commission's finding that Laidlaw is fit, capable, and willing to render adequate or proper service. Also, the protestants do not assert here that the transfer will result in ruinous or unreasonable competition.

In the other case, Bristol-Jenkins Bus Line, Inc. sought approval to transfer to National Coach Works, Inc. certain of its operations authorized under its "B" certificate to enable National Coach to provide charter service to all points in Virginia from points of origin in 30 named cities and 63 specified counties. In granting the application, the Commission found that the transfer was justified by the public convenience and necessity; that the transferee was fit, capable, and willing to render adequate and proper service; and that the proposed transfer would not cause ruinous or unreasonable competition. Likewise, the protestants in the second case do not challenge on appeal the latter two findings of the Commission.

In both cases, the Commission held that the presumption of continuance doctrine applied to the certificates under scrutiny, relying upon *Park Bros.* v. *S & M Systems Corp.*, 216 Va. 322, 218 S.E.2d 441 (1975), and *Petroleum Transit Corp.* v. *Commonwealth*, 202 Va. 716, 119 S.E.2d 494 (1961). In *Petroleum Transit*, the Commission approved the transfer of a certificate of public convenience and necessity between petroleum tank truck carriers under the provisions of Chapter 12.2 of Title 56 of the Code. The certificate had been obtained under a statutory "grandfather clause," rather than upon an original application to the Commission requiring a finding that the proposed operation was justified by public convenience and necessity. We held that in the case of a transfer, the same test would be applied, whether the certificate had been initially granted under the grandfather clause or by an original application to the Commission. That test is whether the *transfer* is justified by the public convenience and necessity and not whether the proposed *operation* is so justified. The Court said that the certificate itself equipped the holder with the legislative finding that operations under the certificate are justified by the public convenience and necessity. Thus, the Court held that the burden was on the objectors to the application to show that the *transfer* of the certificate would not serve the public convenience and necessity. 202 Va. at 721, 119 S.E.2d at 497.

In *Park Bros.*, at issue was the transfer of a household goods carrier certificate, originally granted by the Commission under Chapter 12.1 of Title 56 of the Code upon a finding of public convenience and necessity. There, the Court, relying upon *Petroleum Transit*, held the "existing certificate carries with it a legislative declaration and a prima facie presumption that it does serve

the public convenience and necessity, and the burden is on a protestant to a transfer to show ruinous or unreasonable competition, or that the transfer will not serve the public convenience and necessity." 216 Va. at 326, 218 S.E.2d at 444.

Furthermore, in the present controversy, the Commission held in both cases, relying on four of its prior decisions dating from 1982, that there was "no merit" to the protestant's argument that a *portion* of a certificate may not be transferred.

■ Treating the certificates in each case as being "grandfathered" under the provisions of Code § 56-338.61, enacted in 1960, ("[a]ny person . . . who was lawfully engaged in the business of a special or charter party carrier . . . within this State on January 1, 1960, shall be issued an 'A,' 'B' or 'C' certificate, as requested by such person . . . ."), the protestants argue that the presumption of continuance of public convenience and necessity does not apply to a "grandfathered" special or charter party certificate. Noting that transfer of special or charter party certificates was first permitted in 1981 by amendment to § 56-338.56, the protestants contend that the "apparent reason for the legislature's intent in not requiring even the least scrutiny" before issuing a "grandfathered" certificate was the former provisions of § 56-338.56, which prohibited the sale or transfer of certificates. Thus, the protestants argue that the Commission's interpretation of the charter party statutes, which recognizes the presumption in issue using the *Petroleum Transit* and *Park Bros.* rationale, is erroneous and at odds with legislative intent. The protestants contend these decisions are inapposite because there exists "a major distinction" between carriers of "goods," such as petroleum and household effects, and carriers of "human beings." Thus, they say the presumption should not apply in the latter situation. We disagree. The "distinction" perceived by the protestants makes no difference.

■ As the Commission implicitly found, the origin of the particular certificate under scrutiny is immaterial to its transfer because, under the *Petroleum Transit* case, a "grandfathered" certificate, like a certificate granted upon an original application, equips the holder with a legislative finding that operations under the certificate are justified by the public convenience and necessity. Such a certificate, regardless of its origin, becomes a valuable asset. The holder establishes its business upon the basis of the certificate, making substantial investment in equipment and facilities.

The value of a "grandfathered" certificate would depreciate if the holder, seeking to transfer it, were required to prove public convenience and necessity to the same extent required of an original applicant. *Park Bros.*, 216 Va. at 326, 218 S.E.2d at 444. Moreover, a ruling upholding protestants' argument that these applicants must meet the same burden of proof required for new authority would render the transfer statute "wholly unnecessary." *Id.*, 218 S.E.2d at 444.

Consequently, we hold the Commission correctly applied the presumption of continuance in these cases. Because there was no proof that the transfers in issue do not serve the public convenience and necessity and because there is no issue on the questions of fitness and ruinous competition, the Commission properly determined that the respective applications should be granted.

Finally, protestants contend the Commission may not allow transfer of only a portion of a special or charter party certificate. They point out that the transfer statute does not provide for severability of certificates and argue that "the obvious rationale for the omission" is to avert the possibility of either "splitting" certificates or "piecemeal grants of authority by a certificate holder to as many new carriers as there are points of origin granted in the original certificate's authority." Protestants argue that to allow transfer of portions of certificates "would create the possibility of an almost unchecked multiplication of new carriers, largely bypassing the regulatory scrutiny by the Commission that the legislature not only intended but mandates, perpetually rolling over authority that never bore the burden of showing public convenience and necessity." We reject this contention.

In a transfer proceeding, the Commission still must determine public convenience and necessity. In such a proceeding, the ultimate burden of proof remains on the applicant, but the burden of going forward with the evidence is shifted to the objectors "to show ruinous or unreasonable competition, or that the transfer will not serve the public convenience and necessity." *Park Bros.*, 216 Va. at 326, 218 S.E.2d at 444. Thus, even under the transfer statute, the applicant does not escape regulatory scrutiny by the Commission.

In addition, as the Commission noted in its opinion, transfer of a portion of a certificate does not result in unrestrained proliferation of new carriers. The Commission said: "The entry of a 'new' carrier and the exit of the 'old' does not alter the number

of carriers authorized to serve the area. . . ." Instead, as the Commission says on brief, "such a transfer insures continuing service to the public."

Accordingly, the orders appealed from will be

*Affirmed.**

---

* In the *Dominion Coach Company* appeal, the protestants attack a ruling made in the Commission's opinion, but not explicitly included in its final order, about the use of yellow school buses in general charter party operations. The Commission noted the statutory conflict between Code §§ 46.1-169.1 and 22.1-183 concerning whether yellow school buses may lawfully be used for purposes other than transporting pupils to and from schools or on school related trips. We do not reach this question for decision because resolution of the question is not necessary to adjudicate the validity of the Commission's rulings on the transfer issue.