## Richmond

ATLANTIC GREYHOUND LINES OF VIRGINIA, INC., ET AL. v. JONES BUS COMPANY, INCORPORATED.

CHESAPEAKE AND NORTHERN TRANSPORTATION CORPORATION v. JONES BUS COMPANY, INCORPORATED.

September 5, 1975.

Record Nos. 750055 and 750068.

Present, All the Justices.

*Calvin F. Major* (*Donald M. Schubert; Goddin, Major, Schubert & Hyman,* on brief), for appellants in Record No. 750055.

*Michael A. Inman* (*Holladay, Holmes & Inman,* on brief), for appellant in Record No. 750068.

*Michael L. Rigsby*, for State Corporation Commission in Record Nos. 750055 and 750068.

No brief filed or oral argument on behalf of appellee in Record Nos. 750055 and 750068.

HARMAN, J., delivered the opinion of the court.

These are appeals of right by competing carriers from an order of the State Corporation Commission (the Commission) awarding Jones Bus Company, Inc., (Jones Company) a "B" certificate of public convenience and necessity to operate as a special or charter party bus carrier, under Chapter 12.4 of Title 56 of the Code, from the cities of Portsmouth, Norfolk, Chesapeake, Suffolk, Virginia Beach, Newport News and Hampton to other points in Virginia.

The competing carriers, Atlantic Greyhound Lines of Virginia, Inc., (Greyhound), Newton Bus Service, Inc., Community Motor Bus Company, Incorporated, and Chesapeake and Northern Transportation Corporation, are authorized to provide intrastate special or charter party service originating from all or some of the points applied for by the Jones Company.

Andrew T. Jones (Jones), the president and sole stockholder in Jones Company, has operated a bus business since 1954 and has principally engaged in employee hauling. Jones was operating a bus charter service on July 1, 1960, the effective date of Chapter 12.4 of Title 56 of the Code. He applied to the Commission and was issued a "B" special and charter party certificate under the grandfather clause of Code § 56-338.61. This certificate authorized Jones to provide special and charter party service by bus from the cities of Portsmouth, Norfolk, Chesapeake, Suffolk and Virginia Beach to all points in Virginia. Jones, at a time not disclosed by the record, obtained authority from the Interstate Commerce Commission to provide interstate charter party service from Portsmouth, Norfolk, Chesapeake, Virginia Beach, Newport News and Hampton to points in 17 eastern and southern states.

In November, 1973, a certificate of incorporation was granted to the Jones Company. Jones testified that his purpose in incorporating was to enable his business to continue in the event of his death. At the time of the hearing before the Commission on September 18, 1974, Jones was operating six air-conditioned coaches with restroom facilities, one transit bus and four school buses, all of which he pro-

posed to transfer to the Jones Company. Jones also proposed in his application to surrender his existing "B" certificate if the application of the Jones Company was approved.

The evidence shows, and the Commission found, that the Jones Company, under the plan proposed by Jones, would be adequately equipped and financed to conduct its proposed operations. This finding is not challenged by the competing carriers, nor do they challenge the Commission's award to the Jones Company of a certificate of public convenience and necessity to serve Portsmouth and Norfolk.

The competing carriers do challenge, however, the sufficiency of the evidence presented on behalf of the Jones Company to support the Commission's finding of public convenience and necessity in awarding the certificate to the Jones Company to serve Virginia Beach, Chesapeake, Suffolk, Newport News and Hampton. They point out that Code § 56-338.56 expressly prohibits the sale, transfer or lease of such a certificate and argue that where, as here, there is a change of entity, the applicant must prove, by competent evidence, that public convenience and necessity will be served by authorizing service from each of the origin points proposed by the applicant.

The pertinent statute, Code § 56-338.54, provides:

"The public convenience and necessity to be served by special or charter party carriers is to provide economical, comfortable and convenient transportation for special or charter parties and in the issuance of all types of certificates authorized by this chapter the Commission shall consider all facts bearing on that purpose, including existing means of transportation, the character of the applicant, and the kind and location of the equipment he proposes to use. The Commission shall issue no more certificates than the public convenience and necessity require, and shall place such restrictions upon such certificates as may be reasonably necessary to protect any existing motor carrier, whether such carrier is operating under certificates issued by the Commission under this chapter or under chapters 12 (§ 56-273 et seq.) or 12.3 (§ 56-338.40 et seq.) of this title or otherwise, but the Commission shall not deny a certificate solely on the ground that the applicant may render special or charter party service originating at the same point or points as such other motor carriers."

Clearly, the General Assembly, by enacting this statute, intended that the public receive special and charter party service that is eco-

nomical, comfortable and convenient, and that the Commission's decision in granting or denying such a certificate be based upon a consideration of three factors, namely: (1) an existing public need for the proposed carrier's service; (2) the proposed carrier's ability to provide economical, comfortable and convenient service for the geographical area; and (3) the economic and competitive impact which the proposed carrier would have upon existing carriers providing similar service within the same territory.

As we pointed out earlier, the Commission's finding that the Jones Company would be able to provide the proposed service is not an issue here. We, therefore, need only review the evidence adduced before the Commission dealing with the two other factors.

In this connection we must keep in mind that a decision of the Commission is presumed to be correct, and a determination made by the Commission, based upon the application of correct principles of law, will not be disturbed unless it is contrary to the evidence or without evidence to support it. *N. & W. Ry. Co.* v. *Corporation Comm'n.* 215 Va. 214, 218, 207 S.E.2d 883, 886 (1974).

The evidence in support of the application, for purposes of discussion, can best be divided into two distinct classes. In the first class was evidence showing Jones' past record of service in Portsmouth, Norfolk, Virginia Beach, Chesapeake and Suffolk, which we will refer to as the Portsmouth-Norfolk segment. In the second class was evidence in support of the application for rights from Newport News and Hampton, hereinafter referred to as the Newport News-Hampton segment.

Jones testified, in support of the Portsmouth-Norfolk segment, that he had provided charter service to this area since 1954. The history related by Jones shows that his intrastate charter receipts totaled only $1500 in 1960. These receipts have grown progressively through the years until between January 1, 1974 and September 15, 1974, Jones operated 66 intrastate charter trips which produced $15,910.68 in revenue. Jones testified about the demand for charter service in the Portsmouth-Norfolk segment and about his past ability to meet requests for service. His testimony shows that he operated trips originating in each of the cities in the Portsmouth-Norfolk segment during the preceding year. Three witnesses from Portsmouth and one from Norfolk testified of their experience with Jones, the satisfactory quality of his service, personnel and equipment, and of their desire and intention to use the service of the Jones Company if authority is awarded to it.

While recognizing that Jones' testimony, coupled with the testimony of "public" witnesses, sustains the Commission's award of a certificate of public convenience and necessity for Portsmouth and Norfolk, the competing carriers argue that this same evidence is insufficient to authorize the award of a certificate for the other cities of the Portsmouth-Norfolk segment, viz, Virginia Beach, Chesapeake and Suffolk. This, in effect, is an argument that no certificate of public convenience and necessity may be awarded in the absence of testimony of a "public" witness.

We sustain the Commission in its award of a certificate to the Jones Company for the entire Portsmouth-Norfolk segment. While Code § 55-338.56 prohibits the sale, transfer or lease of a special or charter party certificate, Jones' evidence showing that he has satisfactorily performed, with the same equipment and personnel, a substantial number of special and charter party trips in the Portsmouth-Norfolk segment, and his proposal to surrender that certificate, establish that a need for future service will arise upon surrender of Jones' certificate.

As we noted earlier, the Commission's finding that the Jones Company would be able to provide economical, comfortable and convenient service is not contested.

Since Jones, the individual, is already in competition with the competing carriers, and the issuance of a certificate to the Jones Company will neither increase nor diminish this competition, it is evident that there will be no adverse economic impact resulting from the Commission's action in issuing the certificate to the Jones Company.

A review of the evidence supporting the award of the Newport News-Hampton segment, however, requires us to arrive at a different conclusion from that reached by the Commission. The evidence of the competing carriers shows that they have been meeting all requests received by them for intrastate charter service originating in that area and that they have, in fact, sufficient equipment and personnel to provide more charter service, even on short notice, than they are now providing. One competing carrier, with 24 buses, showed that its charter revenue from the Newport News-Hampton segment was equal to 40% of its "gross profit" from all operations during the preceding fiscal year. Testimony by a Greyhound official establishes that approximately $18,000 in charter revenues, an amount termed "vital and important" to his company's continuing operations in the area, was generated by 94 intrastate charter trips originating in the Newport News-Hampton segment during a six month period in 1973.

While Jones testified that he had received many inquiries for intrastate service in the Newport News-Hampton segment from satisfied interstate customers, he produced only one witness, Elizar Williamson, the Executive Director of a Y.W.C.A. serving a predominately black membership in Newport News and Hampton. She testified that her organization had an active tour and travel program requiring the use of charter buses. While most of the trips sponsored by the Y.W.C.A. during the preceding ten years utilized interstate charters, Mrs. Williamson testified, and filed exhibits to show, that the Y.W.C.A., during the ensuing 10 month period, would sponsor 11 tours of which five are for intrastate travel. Mrs. Williamson testified that she had received "good service" from the existing carriers but was interested in supporting the Jones Company application because Jones, the owner, was black. She expressed an opinion that the equipment of the existing local carriers was not as good as Jones' equipment but acknowledged that she was not familiar with all of the equipment used in charter service by existing carriers and was not aware of "every company" having special and charter party authority in the Newport News-Hampton segment.

On cross-examination Mrs. Williamson revealed that her organization had never used Jones' equipment for interstate charters, although she was aware he had interstate rights. When asked about future use of the services of the Jones Company, if granted rights for the Newport News-Hampton segment, Mrs. Williamson responded that she intended to use the service "if our agreements and our prices merit it." When asked if she had ever needed a bus and had been unable to obtain one, Mrs. Williamson responded:

"Well, yes. It is getting harder. Some of the tours you have to book maybe a year ahead. You can't wait until the last minute. Perhaps you have to change your dates . . . it is really becoming more difficult."

We find this evidence, upon which the Commission relied to sustain its holding of public convenience and necessity in awarding the Jones Company a certificate to serve the Newport News-Hampton segment, fails to show that public convenience and necessity requires approval of the certificate but, in fact, shows that the existing carriers are adequately providing for the intrastate special and charter party needs of the Newport News-Hampton segment. To award the certificate, in these circumstances, clearly would violate the man-

date of Code § 56-338.54 that ". . . [t]he Commission shall issue no more certificates than the public convenience and necessity require, and shall place such restriction upon such certificates as may be reasonably necessary to protect any existing motor carriers . . ."

We, therefore, affirm the Commission's order as to the Portsmouth-Norfolk segment, we reverse its order as to the Newport News-Hampton segment, and the case is remanded for further proceedings not inconsistent with this opinion.

*Affirmed in part; reversed in part; and remanded.*