## Richmond

### Bralley-Willett Tank Lines, Inc., Et. Al. v. Holtzman Oil Corporation.

April 23, 1976.

Record No. 751258.

Present, All the Justices.

*Hulliben Williams Moore (Dennis O. Laing; Christian, Barton, Epps, Brent & Chappell,* on brief), for appellants.

*· J. Sloan Kuykendall (George W. Johnston, III; Kuykendall, Whiting & Costello,* on brief), for appellee.

Harman, J., delivered the opinion of the court.

This is an appeal of right by Bralley-Willett Tank Lines, Inc., and seventeen other petroleum tank truck carriers[1] (petroleum carriers) from an order of the State Corporation Commission (Commission)

1.
Eagle Transport Corp., Felts Transport Corp., Fuel Oil & Equipment Co., Gibbons of Virginia, Inc., Green Motor Lines, Inc., Greenville Transportation Co., Kenan Transportation Corp., Lemmon Transport Co., M & L Distributors, M & M Tank Lines of Va., Inc., E. Brook Matlack, Inc. of Va., O'Boyle Tank Lines, Inc., Shipley of Va., Inc., Spencer Transfer, Inc., The Timlaph Corp. of Va., Turner Transport and Virginia Tank Lines, Inc.

awarding Holtzman Oil Corporation (Holtzman) a certificate of public convenience and necessity under The Petroleum Tank Carriers Act, Ch. 12.2, Title 56 of the Code, to transport gasoline by truck from the pipeline terminal of Gulf Oil Corporation (Gulf) in Fairfax, Virginia, to points in the City of Harrisonburg, the Counties of Shenandoah and Page and a portion of Rockingham County. The petroleum carriers contend that the Commission's finding of public convenience and necessity is not supported by the evidence.

Holtzman is Gulf's commission agent for gasoline and a jobber for heating oil and other Gulf products in the City of Harrisonburg, Shenandoah County, Page County and portions of Rockingham County. It is supplied with petroleum products from Gulf's pipeline terminal facility located in Fairfax, Virginia. As a jobber of petroleum products other than gasoline, Holtzman acquires title to these products and may transport them from the Fairfax terminal under the exemption provided by Code § 56-338.20(d). As a commission agent, Holtzman does not acquire title to the gasoline. Although it may transport gasoline within its distribution area under the exemption provided by Code § 56-338.20(h), it is not permitted to transport gasoline from Gulf's Fairfax terminal into its distribution area without a certificate of public convenience and necessity.

Prior to issuance of Holtzman's certificate, gasoline was delivered by transport to Holtzman's bulk storage facilities in Luray and Mt. Jackson, Virginia, by Gulf or by one of two petroleum carriers designated by Gulf. Holtzman then distributed the gasoline to its customers in smaller 2600-gallon or 1800-gallon delivery vehicles.

Holtzman owns an 8000-gallon transport which it has been using to transport petroleum products other than gasoline from Gulf's Fairfax terminal. It proposed to use this same transport to haul gasoline from Fairfax into its territory. William B. Holtzman, the president of Holtzman, and Kenneth M. Manning, a transportation consultant, testified that Holtzman could achieve substantial cost savings by making direct deliveries of transport lots of gasoline to eight of Holtzman's customers, thereby reducing the inefficiency of double handling. Such an operation would also allow Holtzman to make more efficient use of its equipment.

Robert J. Shepard, a service station operator supplied by Holtzman, testified that he and his customers would be better served if Holtzman delivered gasoline in transport lots, rather than by the smaller delivery vehicles then used. Such large volume deliveries would reduce conges-

tion at his service station since his driveway would be blocked by a delivery vehicle on fewer occasions.

The petroleum carriers introduced four witnesses who testified that the petroleum tank truck carrier business was depressed, that the existing carriers had idle equipment, that these carriers were willing and able to supply Holtzman's needs for transportation of gasoline and that the granting of an additional certificate would aggravate the difficulties already being experienced by the existing petroleum carriers.

The Commission noted that only two of the petroleum carriers would be affected by Holtzman's operation as a petroleum carrier and that, for sometime prior to Holtzman's application, Gulf had delivered most of the gasoline to Holtzman in Gulf-owned vehicles, thereby substantially reducing the traffic handled by the two petroleum carriers. It concluded that the granting of Holtzman's application for a certificate of public convenience and necessity would not have a material impact upon existing carriers. In addition, the Commission found that Holtzman's scheme for direct delivery of gasoline from Gulf's terminal to certain of its customers would enhance the public safety by reducing the amount of handling required, thus reducing the chances of fire or explosion. It also found that reducing the number of vehicle trips required for deliveries would proportionally diminish the chances of vehicular accident. The Commission noted Holtzman's expressed willingness to pass cost savings on to its customers. It found that the public and certain of Holtzman's customers would be convenienced if gasoline deliveries were made with the 8000-gallon transport, in that the driveways of those service stations would be blocked less often.

The Petroleum Tank Truck Carriers Act is a liberal statute. All that is required to be shown by the applicant for a certificate is that the proposed operation is "justified by public convenience and necessity." The fact that existing certificate holders are or might be able to provide service is not of material significance, nor is it of prime importance that such holders might suffer from competition by the granting of additional certificates. The *public* convenience and necessity is the paramount consideration. *Atwood Transport Co.* v. *Commonwealth*, 197 Va. 325, 331-332, 88 S. E. 2d 922, 926-927 (1955); *Petroleum Transit Corp.* v. *Commonwealth*, 202 Va. 716, 719-720, 119 S. E. 2d 494, 496 (1961).

The findings of the Commission must be regarded by us as *prima facie* just, reasonable and correct; it has wide discretion in determining

whether a certificate of public convenience and necessity will be issued. When the Commission's findings are based upon the application of correct principles of law, they will not be disturbed unless they are contrary to the evidence or are without evidence to support them. *Atwood Transport Co.* v. *Commonwealth, supra,* 197 Va. at 332, 88 S. E. 2d at 927; *Petroleum Transit Corp.* v. *Commonwealth, supra,* 202 Va. at 721, 119 S. E. 2d at 497; *Atlantic Greyhound* v. *Jones Bus Co.,* 216 Va. 255, 258, 217 S. E. 2d 857, 860 (1975); *Barnes Transfer* v. *Lee Moving,* 216 Va. 309, 310, 218 S. E. 2d 437, 438 (1975). We cannot sit as a board of revision to substitute our judgment for that of the Commission on matters within its province. *Greyhound Lines* v. *Silver Fox Lines,* 204 Va. 360, 363, 131 S. E. 2d 284, 286 (1963).

Since we cannot say that the Commission abused its discretion or that its findings are contrary to the evidence or without evidence to support them, the Commission's order will be affirmed.

*Affirmed.*