Richmond

## BLANTON'S PACKAGE DELIVERY, INC.

v.

## PONY EXPRESS COURIER CORPORATION OF VIRGINIA, ET AL.

August 31, 1978.

Record No. 771920.

Present: All the Justices.

*Hamill D. Jones (Florence, Gordon and Brown,* on brief) for appellant.

*Denton Roberts; Howard W. Dobbins (Lewis S. Minter; William A. Young, Jr., George A. Warthen; Wallerstein, Goode & Dobbins,* on brief) for appellees.

POFF, J., delivered the opinion of the Court.

On this appeal we review a decision of the State Corporation Commission denying an application for a certificate of public convenience and necessity filed by Blanton's Package Delivery, Inc., (Blanton) pursuant to the Restricted Parcel Carriers Act, Chapter 12.5, Title 56, Code of Virginia.

In 1960 under the exemption afforded by Code §§ 56-273(k),-338.66(c), Homer Blanton started business by transporting parcels in the family car from point-to-point within the corporate limits of the City of Richmond. In 1965, he acquired a common carrier certificate to carry freight along specified routes between Richmond and points in Henrico and Chesterfield Counties; additional routes were approved by certificate granted in 1973. Pursuant to its contract carrier permit and subject to the "two-consignor limitation", Blanton was also authorized to transport property under contract anywhere within the Commonwealth. Yet, it has no authority to extend its rapid parcel delivery service beyond the Richmond city limits. The certificate Blanton sought would have enabled it to operate in and among the cities of Richmond, Petersburg, Colonial Heights, and Hopewell and the counties of Henrico, Chesterfield, Hanover, Goochland, Powhatan, Dinwiddie, and Prince George as a "restricted parcel carrier".[1]

Blanton's application was protested by two certificated restricted parcel carriers, Pony Express Courier Corporation of Virginia and Purolator Courier Corp., and by four certificated common carriers of freight, Estes Express Lines, Long's Express, Inc., Overnite Transportation Co., and Wilson Trucking Corp. (collectively, the protestants). Protestants introduced six witnesses whose testimony tended to show that existing carriers were providing service adequate to the present need and were willing

---

[1] Such a carrier is defined as one engaged "in the transportation for compensation of parcels, packages and articles not in a package, subject to" certain limitations on size and weight and certain rules regulating the nature and scope of the service. Code § 56-338.65(e).

and able to meet additional needs as they arise. Blanton introduced 22 witnesses whose testimony was designed to prove that Blanton could provide better, faster, and more convenient service than that currently available; that Blanton was equipped with a two-way radio system which enabled it to dispatch delivery vehicles promptly upon receipt of customers' orders; and that, while the service offered by existing carriers was largely limited to scheduled routes, Blanton specialized in emergency service and in point-to-point delivery upon demand.

In an opinion filed December 28, 1977, the Commission held "that the proposed service is not justified by the public convenience and necessity" and, rejecting Blanton's petition to rehear or reconsider, confirmed its order entered August 29, 1977, denying Blanton's application.[2]

■ Unless contrary to the evidence or without evidence to support them, findings of fact made by the Commission are binding upon this Court, and when correct principles of law have been applied to those findings, the Commission's decision will be affirmed. *Bralley-Willett* v. *Holtzman Oil*, 216 Va. 888, 891, 223 S.E.2d 892, 895 (1976).

■ Blanton argues that, in reaching its decision, the Commission applied an incorrect principle of law. Specifically, Blanton says that the "sole reason" the protestants opposed its application was "to protect their economic interests" and that "there is no doubt that the Commission was persuaded, in part, by the suggested economic impact upon the existing carriers". Blanton points to the following language from the Commission's opinion:

> The Commission remains unpersuaded by the testimony presented by applicant that the public convenience and necessity calls for an additional restricted parcel carrier. Testimony reveals that Blanton's currently provides excellent service in and around Richmond. Denial of this application will in no way prohibit the continuation of such service. The testimony also reveals that Purolator and Pony Express offer a comprehensive network of restricted parcel carrier service in the area pro-

---

[2] The common carriers filed no response to Blanton's notice of appeal. Pony Express and Purolator filed notices of intent to participate in the appeal. Later, Purolator moved to withdraw from participation.

posed to be served by applicant. Both restricted parcel carriers testified of their willingness to serve the present public need for restricted parcel carriers in said area and such need as may arise therein in the future. . . . The record does not show a lack of williningness or ability of such carriers to do so.

The Commission denied Blanton's application because it concluded that the proposed service was not justified by the public convenience and necessity. Its conclusion rested upon two findings, *viz.*, that Blanton's evidence was not persuasive, and that protestants' evidence showed that existing carriers were able to "serve the present public need. . .and such need as may arise. . .in the future."[3] The question is not whether these findings are contrary to the evidence or without evidence to support them. Manifestly, the Commission based its decision, in part, upon the ground that additional service is not justified by the public convenience and necessity if existing carriers are capable of providing that service. The question, then, is whether, in so doing, the Commission applied an incorrect principle of law.

As a matter of public policy, the General Assembly has required the Commission to consider this principle in acting upon applications filed by certain classes of carriers. In one degree or another, statutory protection against additional competition has been expressly provided certificated common carriers of passengers and freight, special or charter party carriers, and sight-seeing carriers by boat. Respectively, Code §§ 56-281, -338.54, -457.3. The chapters governing other classes of carriers contain no such provision. We have recently reviewed two of these. Noting the distinctions the General Assembly has made, we defined the principles of law applicable when the relevant statutes contain no provision for protection of existing carriers:

> The Household Goods Carrier[s] Act is a liberal one, and it contains nothing to suggest that its major purpose is to prevent competition. On the contrary, the statute is "apparently ordained to permit reasonable competition". [Citation omitted]. The household goods carrier is not granted the same statutory

---

[3] Nothing in the Commission's opinion indicates that its decision was based upon any negative finding concerning the "features of the proposed plan of operation" or "the convenience of the proposed service to the public", or "the experience, fitness and ability of the applicant to render the proposed service", the criteria specifically stated in Code § 56-338.76.

protection from competition that a common carrier of passengers is and for obvious reasons.

*Park Bros.* v. *S & M Systems Corp.*, 216 Va. 322, 327, 218 S.E.2d 441, 445 (1975).

> The Petroleum Tank Truck Carriers Act is a liberal statute. All that is required to be shown by the applicant for a certificate is that the proposed operation is "justified by public convenience and necessity." The fact that existing certificate holders are or might be able to provide service is not of material significance, nor is it of prime importance that such holders might suffer from competition by the granting of additional certificates. The *public* convenience and necessity is the paramount consideration. *Atwood Transport Co.* v. *Commonwealth*, 197 Va. 325, 331-332, 88 S.E.2d 922, 926-927 (1955); *Petroleum Transit Corp.* v *Commonwealth*, 202 Va. 716, 719-720, 119 S.E.2d 494, 496 (1961).

*Bralley-Willett* v. *Holtzman Oil*, 216 Va. 888, 890, 223 S.E.2d 892, 894-95 (1976).

The thrust of this language is that the "paramount consideration" is the effect certification of a new carrier will have upon the *public*, not the effect it will have upon existing carriers. It is possible, of course, that the competitive effect upon existing carriers will be so disabling as to disserve the public interest. *See Va. Stage Lines* v. *Commonwealth*, 185 Va. 390, 397, 38 S.E.2d 576, 580 (1946). Such ruinous competition, we believe, is one of the "other things" bearing upon the public convenience and necessity which Code § 56-338.76 authorizes the Commission to consider. On the other hand, except where the General Assembly has established public policy to the contrary, it must be presumed that the emergence of a new, innovative competitor will stimulate existing carriers to serve the public convenience and necessity more efficiently and more economically. Protestants are all certificated carriers with an obvious economic interest in denial of Blanton's application. They protested on the ground that they are willing and able to serve the public need. In effect, the Commission has ruled that since "the record does not show a lack of willingness or ability" on their part to do so, it follows that the public convenience and necessity does not justify an additional certification. To so hold

is to equate the vested economic interests of certificated carriers with the necessity and convenience of the public and to place upon the applicant the burden to show that the service provided by certificated carriers is inadequate to the requirements of the public convenience and necessity. Chapter 12.5 places no such burden upon an applicant.[4]

■ Like the Household Goods Carriers Act and the Petroleum Tank Truck Carriers Act, the Restricted Parcel Carriers Act contains no express provision protecting existing carriers. Reaffirming the principles of law enunciated in *Park Bros.* and *Bralley-Willett*, we hold that the fact that existing restricted parcel carriers are capable of serving the present and projected need is not a proper ground for denying certification of an additional carrier, and that, inasmuch as the decision below was based in part upon such ground, the Commission applied an incorrect principle of law.

■ There was credible evidence tending to show that there is a public demand for, and that Blanton is capable of providing, faster, better, and more convenient parcel delivery service than that now available in the area covered by the application. Since there is no evidence to show that approval of Blanton's application will result in such ruinous competition as to militate against the public convenience and necessity, the Commission's order will be reversed and the case will be remanded with instructions to issue Blanton a certificate.

*Reversed and remanded.*

---

[4] The General Assembly has expressly placed such a burden upon an applicant for a certificate as a common carrier of freight or passengers. Code § 56-281.