## Richmond

## PEOPLES FINANCE SERVICE OF WAYNESBORO, INC. AND PARKS FINANCE SERVICE, INC.

v.

## BENEFICIAL FINANCE CORPORATION AND THE STATE CORPORATION COMMISSION

February 29, 1980.

Record No. 791242.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Howard W. Dobbins (William A. Young, Jr.; Wallerstein, Goode & Dobbins,* on brief), for appellants.

*William F. Schutt; David Meade White (White & Wood, P.C.,* on briefs), for appellees.

HARRISON, J., delivered the opinion of the Court.

The State Corporation Commission, pursuant to the provisions of Code § 6.1-256, ordered that a license to establish an office to conduct a small loan business in Waynesboro be issued to Beneficial Finance Corporation. This action was taken over the opposition of Peoples Finance Service of Waynesboro, Inc., and Parks Finance Service, Inc., which are here on an appeal of right. Appellants allege, *inter alia,* that the Commission erred in finding that the convenience

and advantage of the Waynesboro community would be promoted by granting Beneficial's application.

The City of Waynesboro is located in the eastern part of Augusta County and has a population of approximately 16,000-17,000. The population of Augusta County is estimated to be about 50,000. While the city's population declined between 1970 and 1977, the loss, following the trend of other cities, was largely to the adjacent county. Industries engaged in manufacturing provide employment for about 7,900 persons. Its largest employers are General Electric and E. I. duPont, which together have approximately 5,000 employees. Between 1972 and 1976, the per capita income of those persons living in Waynesboro increased 54% as compared to a 33% increase of those residing in Augusta County. The industrial payroll of the city for 1978 was estimated to have been $140 million, with retail sales of over $75 million. In addition to its downtown business section, the city has four shopping centers.

The financial institutions serving Waynesboro are five banks, having a total of eight offices, two savings and loan associations, two industrial loan associations, six credit unions, and three small loan offices. Several of the banks have branches in small towns or communities located near Waynesboro. Between 1973 and 1977, the number of accounts in the city's small loan companies declined from 3,082 to 2,762, and the amount of loans receivable increased from $1,791,890 to $2,210,917. These percentages of small loan activity in Waynesboro are consistent with those in Virginia as a whole.

Beneficial proposes to construct its small loan office in the King Plaza Shopping Center, which presently has seven small businesses. Its office will be three-tenths to one-half mile from the three existing small loan offices operated by the two protestants and American Finance Co. Beneficial also proposes to discontinue its present office in Crozet and to conduct a "full-service" operation in Waynesboro. Such an operation would include second mortgage lending, the purchasing of institutional paper, making cash advances to customers (*i.e.*, revolving charge), financing merchants' accounts through the use of a credit card system known as "Ben-charge," and making small loans. The protestants say that a small loan license is not needed to provide the other proposed services. A witness for Beneficial testified that staffing an office to provide the proposed services would not be economically feasible in the absence of the ability to provide small loan service. Beneficial plans to transfer the accounts of 177 existing Beneficial customers from its other offices to Waynesboro, provided such a transfer is agreeable with the customers.

The appellants here point out that Beneficial now has an office in Staunton, only eleven miles from Waynesboro, and another in nearby Charlottesville, in which it could offer the same services it proposes to offer in Waynesboro. They contend that the three existing small loan offices in Waynesboro are sufficient to meet the demands in the area for that type loan. They say that their offices are conveniently located and that there would not be any additional advantage to the community by the entry of another small loan company. They note that in Virginia, the average population per small loan license is 12,493, whereas in Waynesboro it is 5,367, and in the Waynesboro-Staunton-Augusta County area only 10,000.

Witnesses for appellants testified that because of the increased use of credit cards, and the emphasis on consumer loans, banks have now become active and aggressive in competing for small loans and consumer loans. They say that in 1978 banks in Virginia made credit card loans in the approximate amount of $127 million. Appellants also argued that credit unions in Waynesboro are exceptionally active, alleging that the duPont Credit Union alone had $32 million outstanding in loans. Essentially, the appellants argue that the damage and disservice that they will suffer greatly outweigh any convenience and advantage that will occur to the Waynesboro community by the establishment of a small loan office by Beneficial.

The Commission has found as a fact that the convenience and advantage of the community will be promoted by the granting of the license. Having so found, the Commission is required by the statute to issue the license, Beneficial having met all other requirements of Code § 6.1-256. Specifically, the Commission found that the evidence showed that the convenience and advantage of the Waynesboro area would be promoted in that: (1) the community's least credit-worthy borrowers, including young adults and older citizens, would have an additional source of credit; (2) the Waynesboro office would be more convenient to a substantial number of Beneficial's existing customers, as well as to area borrowers who may wish to do business with this particular lender in the future; (3) that Beneficial would provide other credit services to consumers and merchants from its small loan office; and (4) that competition from an innovative firm would ensue. These findings of the Commission must be regarded by us as prima facie just, reasonable, and correct and cannot be upset in the absence of a showing of an abuse of discretion.

We have examined the numerous authorities cited in the brief of appellants and have carefully considered their arguments. We do not agree that the language, *convenience and advantage,* used in the

Virginia Small Loan Act, means essentially the same thing as *"the public interest"* used in the Virginia Banking Act and in the Virginia Savings and Loan Act. In 1978 the General Assembly amended both the Banking and the Savings and Loan Acts by substituting the language "the public interest" for the language "public convenience and necessity" in Code §§ 6.1-39 and 6.1-195.48. The Small Loan Act was not so amended, and we cannot attribute such failure to inadvertence.

The words "advantage" and "convenience" are not synonymous. Manifestly it would be more "convenient" to the city resident who does business with a small loan company if the company had an office on every block. But this would not be practical, economic, or an "advantage" to the community. The Commission, in considering whether to grant a license for a small loan office, must of necessity consider many factors to determine what will be an advantage to the community involved and its residents. However, because the involvement of the public is not as great, the standard which applies in considering an application for a small loan office is less restrictive than the standard which applies when considering an application for the establishment of a bank or a savings and loan office. The statutes, rules, and regulations which concern organizing, chartering, and operating a small loan business are entirely different from those that control the other financial institutions. A lower degree of protection from competition is afforded existing small loan companies than is afforded existing banks and savings and loan associations. While the Commission cannot ignore the effect that the establishment of a new small loan office will have on existing small loan companies, its primary concern is not the competition the new office will generate but the convenience and advantage to the community that will flow from the granting of a license.

We attach some importance to the mandate of the statute that the Commission *shall* grant a license for a small loan office when convenience and advantage are shown. We also note the provision in Code § 6.1-256 that if any applicant previously granted a license to make small loans sells his outstanding loan contracts and surrenders his license, the Commission is required to issue a new license to the purchaser to make loans under the Small Loan Act in the same community without reference to whether the convenience and advantage of the community will be promoted thereby.

The General Assembly added the convenience and advantage clause to Code § 6.1-256 in 1956. Prior to that time any person of good character who could raise the required capital was able to ob-

tain a license to operate a small loan business. Appellants argue, and it is reasonable to believe, that the legislature made the amendment to give the Commission the discretionary authority to limit the number of licensees and thereby avoid the harmful consequences of having too many lenders and too much competition. The Commission points out in its opinion that for several years after the amendment it denied a great number of licenses, and limited entry into the small loan business until a particular community could accept more offices without adverse effect. The Commission observed that in recent years inflation and the increased use of credit by all classes of borrowers have brought about a philosophical change by businessmen and regulators concerning how much credit should be available to the public. The Commission now believes that "the purpose of restricting entry into the small loan business is solely to prevent detrimental effects on the public's interest." It finds no justification "for using the convenience-and-advantage standard to protect the market shares of existing licensees from the competition of other lenders."

The construction of Code § 6.1-256 by the Commission finds support in the decisions of this court construing the Petroleum Tank Truck Carriers Act (*Bralley-Willett* v. *Holtzman Oil,* 216 Va. 888, 223 S.E.2d 892 (1976)), the Household Goods Carrier Act (*Park Bros.* v. *S & M Systems Corp.,* 216 Va. 322, 218 S.E.2d 441 1975)), and the Restricted Parcel Carriers Act (*Blanton's Delivery* v. *Pony Express,* 219 Va. 280, 247 S.E.2d 397 (1978)). In each of these cases we considered whether the public convenience and necessity justified an additional service. And in each the protestants defended upon the ground that existing carriers were capable of providing that service. We held that absent statutory provisions to the contrary, this was not a proper ground for denying certification to an additional carrier.

Consistent with these decisions, we agree with the Commission that the thrust of the language "convenience and advantage," found in Code § 6.1-256, is that the paramount consideration in determining whether a new license is to be granted is not whether it will affect existing licensees but whether it will substantially promote the convenience and advantage of the community. We recognized in *Blanton's Delivery* v. *Pony Express, supra,* 219 Va. at 285, 247 S.E.2d at 400, that the competitive effect upon existing carriers or existing licensees could possibly be so disabling as to disserve the public interest. And we agree that evidence of ruinous competition to existing licensees is a consideration which bears upon the convenience and advantage to the community and is a proper factor to be

considered by a licensing authority.

■ While we agree with appellants that the testimony in this case does not show that there is any great need for an additional small loan office in Waynesboro, the Commission has found that the convenience and advantage of the community will be promoted by the granting of the license to Beneficial. It further found that there was no substantial evidence which pointed to the conclusion that the public would suffer from the evils of over-competition because there would be too many small loan companies in Waynesboro, or that the Waynesboro market would be overcrowded by the addition of Beneficial as its fourth licensee. These findings were made in a contested proceeding and on conflicting evidence. A presumption of correctness attaches to the Commission's action, and we cannot say that its determination is contrary to the evidence or without evidence to support it.

We find no merit in appellants' other assignments of error. There is no indication that the Commission, in reaching its conclusions, relied upon evidence which appellants claim was incorrect and inadmissible, or that the Commission did not give due consideration to the evidence in the case.*

The order of the Commission is

*Affirmed.*

---

* The printed record in this case contains material that has no bearing on the issues involved. Plats were included that are illegible. Also included is an almanac which contains a large number of blank pages, recipes, advertisements, and trivia of no value to the Commission or this Court. Because the record was encumbered in this manner, we will tax the cost equally against Beneficial and appellants. Rule 5:38.