## Richmond

PONY EXPRESS COURIER CORPORATION

V.

TIDEWATER COMMERCIAL DELIVERIES, INC., ET AL.

Record No. 831929.

PUROLATOR COURIER CORPORATION OF VIRGINIA

V.

TIDEWATER COMMERCIAL DELIVERIES, INC., ET AL.

Record No. 831930.

November 30, 1984.

Present: All the Justices.

*Howard W. Dobbins (Eric. M. Page; Wallerstein, Goode & Dobbins*, on briefs), for appellant. (Record No. 831929).

*Glenn P. Richardson; Herbert V. Kelly (Lewis S. Minter; Jones, Blechman, Woltz & Kelly, P.C.*, on briefs), for appellees. (Record No. 831929).

*Ellen K. Pirog (Franklin P. Hall; Hall & Hall*, on briefs), for appellant. (Record No. 831930).

*Glenn P. Richardson; Herbert V. Kelly (Lewis S. Minter; Jones, Blechman, Woltz & Kelly, P.C.,* on briefs), for appellees. (Record No. 831930).

THOMAS, J., delivered the opinion of the Court.

This is an appeal of right from the State Corporation Commission. The Commission granted Tidewater Commercial Deliveries, Inc. (TCD), a statewide restricted parcel carrier certificate pursuant to the Restricted Parcel Carriers' Act (the Act), Code §§ 56-338.65 et seq. Pony Express Courier Corporation (Pony Express) and Purolator Courier Corporation of Virginia (Purolator) opposed TCD's application on several grounds including their contention that TCD, if granted the certificate, would not and could not meet the full territorial service requirement set forth in Code §§ 56-338.65(e)(4) and 56-338.77. The Commission found as a fact that TCD proposed a new and innovative service. Once that finding was made, the Commission, relying upon this Court's decision in *Blanton's Delivery* v. *Pony Express,* 219 Va. 280, 247 S.E.2d 397 (1978), concluded that TCD had thereby established public convenience and necessity, and ruled that TCD was entitled to a statewide restricted parcel carrier certificate.

On appeal, Pony Express and Purolator make several assignments of error. Among these is a repeat of the argument made before the Commission concerning the full territorial service issue. In our opinion that issue is dispositive. Therefore, we will not consider the other assignments of error.

TCD was incorporated in 1976. At that time, TCD's sole stockholder, John Bowditch, perceived a need to provide to automobile dealerships in Newport News the immediate delivery of automobile parts for use in their service departments. The general purpose of TCD was to provide a delivery service that responded immediately to customer requests on a "time sensitive" basis.

In January 1977, TCD acquired a contract carrier permit pursuant to Code § 56-288. This permit allowed TCD to transport property between all points in Virginia subject to the restriction that the property of no more than two consignors at any one time could be transported in a single vehicle. *See* Code § 56-289. Using its contract carrier status, TCD developed a time sensitive delivery service in much of the Tidewater area.

In December 1977, TCD was granted a restricted parcel carrier certificate authorizing it to transport parcels, subject to certain size and weight limitations, between all points within the counties of Gloucester, James City, and York and the cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Virginia Beach, and Williamsburg. As a restricted parcel carrier, TCD was authorized to transport parcels in and around Tidewater without regard to the two-consignor rule.

Through use of its contract carrier status, TCD built up a clientele in Richmond. At the time the statewide application was filed, TCD had 12 vehicles stationed in Newport News and 12 stationed in Richmond.

The Commission found that TCD had developed a method of operation different from other carriers in the Commonwealth. First, the operation was designed to satisfy a public need for the immediate dispatch of vehicles and delivery of parcels. Further, TCD developed a coding system that classified parcels according to the customer's timing requirements. Those codes include: (1) critical handling for customers who need immediate service, (2) priority handling for customers who need pickups in four to six hours, and (3) routine or overnight service. The Commission found that TCD did not operate over regular routes on a daily schedule. According to the Commission, all service was conducted over irregular routes, and 90% of TCD's business was time sensitive.

In its opinion, the Commission also addressed the full territorial service issue. It wrote as follows regarding the meaning of that phrase:

> In our opinion, the terminology "full territorial service" only requires a carrier to have the ability and willingness to serve a customer request, regardless of the customer's geographic location.

According to the Commission, a two-part standard applies to the resolution of the full territorial service issue: ability and willingness. Applying its test to the facts of this case, the Commission concluded as follows: "Bowditch testified that TCD is ready, willing and able to serve all requests for service regardless of geographic location." In the Commission's opinion, Bowditch's statement was enough to meet the statute's full territorial service

requirement. Pony Express and Purolator respond that if this Court upholds the Commission's ruling, any person with a car who expresses a willingness to drive around Virginia will be entitled to a restricted parcel carrier certificate.

The full territorial requirement is set forth at two places in the Act. In Code § 56-338.65(e), the status is defined as follows:

> "*Restricted parcel carrier*" means any person who or which undertakes to engage exclusively in the transportation for compensation of parcels, packages and articles not in a package, subject to the following restrictions and conditions:
>
> . . . .
>
> (4) Service shall be provided on a full territorial basis, with pickup and delivery at any and all locations in the area authorized to be served, including locations in rural areas or not in any incorporated city or town, and whether requiring operation over regular or irregular routes.

The requirement contained in Code § 56-338.65(e)(4) is repeated almost verbatim in Code § 56-338.77. The attention paid by the General Assembly to the issue of full territorial service makes clear that this issue must be given careful consideration in any case where a restricted parcel carrier certificate is sought. It is plain that the legislature intended to prevent a carrier, certified under these statutory provisions, from concentrating upon one portion of its service territory while ignoring the remainder of that territory. The full territorial service requirement is a rule of uniformity designed to insure that all the citizens in a given service area will be provided substantially the same service.

In the proposed tariff, filed as part of its application, TCD recites the full territorial service rule and states that the tariff and TCD's service will meet the requirements of that rule. In the tariff, the Commonwealth is divided into three zones: Zone T, which encompasses Tidewater and is subdivided into 9 parts; Zone R, which encompasses Richmond and is subdivided into 11 parts; and Zone 10, which encompasses all geographic areas of Virginia other than Richmond and Tidewater. The proposed tariff describes three types of handling: regular, priority, and critical. Significantly, priority handling — which provides for delivery within four to six hours — is not available in Zone 10. That is, despite

the statement in the tariff that full territorial service is provided, the tariff itself reveals that only Richmond and Tidewater will receive all of TCD's services while the rest of the Commonwealth will not.

In his testimony, TCD's sole stockholder, Bowditch, shed further light on the full territorial service issue. He testified that if the requested certificate were granted, TCD would, within 12 months, expand into northern Virginia. He said that the Roanoke Valley would follow, then probably Charlottesville and the Shenandoah Valley. He admitted the lack of priority handling in most of Virginia. And he admitted that no plans existed for locations, people, facilities, terminals, and equipment in other parts of the Commonwealth.

In our opinion, the full territorial service requirement was not met by TCD. TCD sought governmental approval to serve the *entire* Commonwealth of Virginia. Yet, even in its tariff, TCD made clear that it would not provide all the citizens the same type service. TCD sought to do exactly what the Act's full territorial service requirement seeks to prevent: TCD sought to concentrate its business activities in two major population centers in Virginia while neglecting all the rest of the Commonwealth. Under the statutes, such conduct is not acceptable. In addition, Bowditch's testimony makes clear that even if the certificate were granted, TCD did not even plan to attempt to serve all of Virginia for several years. TCD sought full authority to serve the Commonwealth while reserving to itself the decision on when and where it would render that service. By Bowditch's testimony, it is clear that TCD was set to embark on a course of piecemeal service to Virginians. Such conduct runs counter to the concept of full statewide service.

TCD and the Commission argue that the Commission's determination that TCD is entitled to the requested certificate must be upheld because it is presumed to be correct and must be affirmed unless the determination is contrary to the evidence or without evidence to support it. *Peoples Finance* v. *Beneficial Finance*, 220 Va. 808, 263 S.E.2d 59 (1980); *Barnes Transfer* v. *Lee Moving*, 216 Va. 309, 218 S.E.2d 437 (1975). The general principle advanced by TCD and the Commission is correct. However, in this case, the exception applies because the Commission's ruling regarding full territorial service is contrary to the evidence.

Next, TCD and the Commission contend that this Court's decision in *Blanton's Delivery* v. *Pony Express*, 219 Va. 280, 247

S.E.2d 397 (1978), is controlling and requires us to affirm the Commission's decision. We disagree. *Blanton* is distinguishable. There, the Commission denied an application for restricted parcel carrier status covering Richmond and several neighboring communities. There was no question in *Blanton* whether the applicant would serve all of the designated area. Thus, the issue of full territorial service was not discussed in *Blanton*. The problem in *Blanton* was that one reason for the Commission's denial of the application was its finding that existing carriers were able to serve the present and future public need. We held there that, "the fact that existing restricted parcel carriers are capable of serving the present and projected need is not a proper ground for denying certification of an additional carrier." 219 Va. at 286, 247 S.E.2d at 400. Plainly the holding in *Blanton* has nothing whatever to do with the present problem.

Despite the foregoing, TCD and the Commission point to other language in *Blanton*, which reads as follows: "[E]xcept where the General Assembly has established public policy to the contrary, it must be presumed that the emergence of a new, innovative competitor will stimulate existing carriers to serve the public convenience and necessity more efficiently and more economically." 219 Va. at 285, 247 S.E.2d at 400. Relying upon the quoted language, TCD and the Commission argue that the Commission found as a fact that the service offered by TCD was new and innovative. Once that finding was made, so the argument goes, the presumption referred to in the passage quoted from *Blanton* came into play and the Commission necessarily granted the application. The essence of this argument is that whenever an applicant proves that he proposes a new and innovative service, he is entitled to a restricted parcel carrier certificate. We disagree.

The argument advanced by TCD and the Commission virtually disregards the several conditions and restrictions contained in the restricted parcel carrier provisions. By their argument, the full territorial service requirement has no meaning. Yet, as we have noted, it is apparent from the statutory scheme that the service requirement cannot be so ignored. *Blanton* was never intended to eliminate the several statutory requirements imposed by the General Assembly upon the issuance of a restricted parcel carrier certificate. Moreover, even applying the presumption, it is clear, on the facts of this case, that it was overcome by TCD's own evi-

dence that it would not comply with the full territorial service requirement.

In this case, TCD "bit off more that it could chew." By its evidence, it was not able to serve all of Virginia nor, considering its proposed tariff, was it willing to do so. We hold that the full territorial service requirement was not met in this case. Therefore, in our opinion, TCD failed to establish that the public convenience and necessity would be served by the grant of its application.

In light of the foregoing, the Commission's decision will be reversed and the case remanded for the entry of an order consistent with this opinion.

*Reversed and remanded.*

COCHRAN, J., dissenting

The Restricted Parcel Carriers Act, like the Household Goods Carriers Act and the Petroleum Tank Truck Carriers Act, contains no express provision protecting existing carriers. *Blanton's Delivery* v. *Pony Express*, 219 Va. 280, 286, 247 S.E.2d 397, 400 (1978). Therefore, it is a liberal statute and should be so construed. *Id.* at 284-85, 247 S.E.2d at 399-400. In my view, a liberal construction would effectuate the legislative intent of promoting competition and encouraging the exercise of ingenuity by carriers of this category so that the public would benefit from improved service. The opinion of the majority, however, based upon a narrow construction of the statute, merely protects the competitive positions of carriers already certificated by the Commission.

The Commission's findings of fact are binding unless contrary to the evidence or without evidence to support them. *Blanton's Delivery*, 219 Va. at 283, 247 S.E.2d at 398. The majority finds the Commission's determination that TCD met the territorial service requirement is contrary to the evidence. I disagree. There was evidence that TCD was willing and able to meet any requests for service at any geographic location in Virginia.

The statute requires a restricted parcel carrier to "provide service from and to all locations in the area authorized to be served." Code § 56-338.77. The majority appears to read into this provision and Code § 56-338.65(e)(4) a requirement that every service provided by the carrier must be extended to all locations. I find no justification for such a requirement.

TCD presented evidence that it would serve all geographic locations with two types of service, *i.e.*, regular handling and critical handling. TCD should not be disqualified merely because an intermediate level of service, priority handling, would not be offered in all locations. Priority handling required pickup service in 4-6 hours. The Commission may well have concluded that no such schedule could reasonably be met in serving customers located far from metropolitan centers. There was evidence to support the Commission's ruling that TCD satisfied the territorial service requirement.

The Commission properly ruled that TCD's application was justified by public convenience and necessity, based upon its finding that the service provided was new and innovative. Thus, in *Blanton's Delivery* we held that public convenience and necessity was presumed from emergence of a new, innovative competitor absent a showing that certification of the applicant would result in ruinous competition. 219 Va. at 285-86, 247 S.E.2d at 400.

The majority notes the argument of Pony Express and Purolator that if we upheld the Commission's ruling, "any person with a car who expresses a willingness to drive around Virginia will be entitled to a restricted parcel carrier certificate." This argument, while apparently persuasive to the majority, is fatally flawed. It ignores the requirement that the applicant must establish to the satisfaction of the Commission his abililty to provide the service. In the present case, the applicant has demonstrated the ability to serve a limited territory. The Commission was justified in concluding, based on the applicant's successful experience in a limited operation, that a successful operation on a larger scale could be anticipated.

That the public interest would be served by innovative methods introduced by an enterprising and imaginative carrier cannot be denied. To require such an applicant to enlarge its territory only through multiple applications as its successful operation progresses is to discourage ingenuity and ambition by erecting costly and time-consuming barriers that are not in the public interest. I would affirm the Commission's order.

RUSSELL, J., joins in dissent.