# PUROLATOR COURIER CORPORATION OF VIRGINIA

## V.

# CLEMONS COURIER CORPORATION, INC. AND STATE CORPORATION COMMISSION

Record No. 880027

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

*Phoebe P. Hall (Franklin P. Hall*, on briefs), for appellant.

*G. Ronald Grubbs, Jr.; M. Brooks Savage, Jr. (Lewis S. Minter; Anthony Gambardella; Coates & Davenport,* on briefs), for appellees.

RUSSELL, J., delivered the opinion of the Court.

The State Corporation Commission (SCC), on September 8, 1987, entered a final order granting a certificate of public convenience and necessity to Clemons Courier Corporation, Inc. (Clemons) as a restricted parcel carrier, over the protest of Purolator Courier Corporation of Virginia (Purolator).[1] Purolator appeals.

Clemons had previously been operating as a contract carrier under a certificate of public convenience and necessity issued in 1985. Its principal source of business was a contract with the Virginia Department of Social Services to deliver data-processing material to that agency's 150 offices throughout the Commonwealth. Clemons' evidence showed that its vehicles visited each county and city within Virginia at least once in every business day and that it was able to provide daily parcel service to all points in the state.

As a contract carrier, Clemons was subject to Code § 56-289, which provides: "A contract carrier of property may not transport on any one motor vehicle over any highway of this State, outside of the corporate limits of any city or town, property of more than two consignors at the same time . . . ." Clemons took the position that it had "excess capacity" on the trucks it used to serve its contract customers, that its routes brought those trucks near all points in the state at some time during each business day, and that it might profitably use that excess capacity to expand its operations into restricted parcel service, if permitted to do so.

As a restricted parcel carrier (RPC), Clemons would be required to transport parcels meeting certain statutory criteria, for any customer, without discrimination, based upon published tariffs, to and from any point in Virginia. When acting as an RPC, Clemons would not be subject to the "two consignor rule." This, Clemons contended, would serve the public interest by providing needed additional parcel service, promoting competition, and reducing costs to the people of all parts of the state.

---

[1] Pony Express Courier Corporation also filed a protest but withdrew it before the SCC entered its final order.

■ The SCC made findings which agreed with Clemons' contention in ordering issuance of the certificate. Purolator challenges those findings on appeal, questioning whether Clemons' equipment, resources, management, financial stability, and proposed method of operations are sufficient to provide efficient, economical, and nondiscriminatory restricted parcel service throughout the state. The findings of fact made by the SCC, however, are binding upon appeal unless they are contrary to the evidence, lack evidence to support them, or are based upon erroneous principles of law. *Blanton's Delivery* v. *Pony Express*, 219 Va. 280, 283, 247 S.E.2d 397, 398 (1978); *Bralley-Willett* v. *Holtzman Oil*, 216 Va. 888, 891, 223 S.E.2d 892, 895 (1976).

■ In the present case, the only evidence adduced before the SCC was that offered by Clemons. It included the oral testimony of 14 witnesses, extensive responses to discovery, and additional documentary evidence. The protestants offered no evidence at all, but the cross-examination of Clemons' witnesses was so extensive that the transcript of oral testimony is 1,248 pages in length. All the SCC's findings are based on some supporting evidence and none are contrary to the evidence. Consequently, our consideration is limited to the question whether the SCC's findings are based on erroneous principles of law.

Purolator argues that contract carriers are bound by the "two consignors" rule of Code § 56-289, whereas RPC's are prohibited by Code § 56-338.67 from transporting "property for compensation on any highway in this State except in accordance with the provisions of this chapter" (Chapter 12.5 of Title 56, Code of Virginia, 1950, as amended, captioned "Restricted Parcel Carriers"). Thus, Purolator argues, the two classifications, contract carriers and RPCs, are mutually exclusive. Purolator contends that the statutory scheme evidences a clear legislative purpose to separate these two authorized species of motor carriers in such a way that no carrier may, by using the same vehicle, act as a contract carrier and an RPC at the same time. If that is correct, the legislative scheme would prevent the very method of operation the SCC has expressly authorized Clemons to adopt: the commingling of contract carrier consignments and RPC consignments on a single vehicle. This contention brings us to an examination of those chapters of Title 56, Code of Virginia, 1950, as amended (captioned "Public Service Companies"), which affect motor vehicle carriers.

■ Chapter 12 of Title 56, captioned "Motor Vehicle Carriers Generally," defines as "motor carrier[s]" all "common carrier[s] by motor vehicle," all "restricted common carrier[s] by motor vehicle," and all "contract carrier[s] by motor vehicle." *See* Code § 56-273(h). All "motor carriers," except for certain exemptions not pertinent here, are subject to the control, regulation, and supervision of the SCC. Code § 56-275. Chapter 12 includes articles dealing specifically with specialized motor carriers, e.g., motor carriers operated by railroad or express companies, (Art. 2.1), contract carriers (Art. 3), and taxicabs (Art. 4.1). Motor buses and common carriers of motor freight are also generally controlled by the provisions of Chapter 12.

■ A "contract carrier" is defined as any person who is not a common carrier or a restricted parcel carrier, who transports property by motor vehicle for compensation "under special and individual contracts or agreements." Code § 56-273(f). Contract carriers are free of the requirements imposed on common carriers relating to non-discriminatory area-wide service and regulated published tariffs, but they are subjected to the "two-consignor" limitation of Code § 56-289, mentioned above. The first provisions concerning contract carriers were enacted in 1936. Acts 1936, c. 129.

■ Appended to Chapter 12 are subchapters providing for the regulation of other specialized motor carriers for which the General Assembly has provided in later years, e.g., Household Goods Carriers (c. 12.1, 1948), Petroleum Tank Truck Carriers (c. 12.2, 1952), Sight Seeing Carriers (c. 12.3, 1956), Special or Charter Party Carriers (c. 12.4, 1960), Restricted Parcel Carriers (c. 12.5, 1970), and Carriers by Motor Launch (c. 12.7, 1983). Each of these successive enactments carves out a limited area of less stringent regulation for businesses which engage in a specialized form of motor transportation for compensation, not requiring the degree of regulation imposed on common carriers generally. As a *quid pro quo*, these specialized carriers are confined to certain business limitations.[2]

---

[2] *See, e.g.,* Code § 56-338.70, which provides:

As to restricted parcel carriers, the provisions of this chapter shall be controlling, and no laws in conflict herewith, or inconsistent herewith, shall have any application to such carriers. Operation by a restricted parcel carrier from and to all points in a described territory, whether over regular or irregular routes, shall not be deemed an operation over the route of a holder of a certificate authorizing operation as a common carrier or property for the

An RPC, for example, is defined as one:

who or which undertakes to engage *exclusively* in the transportation for compensation of parcels, packages and articles not in a package, subject to the following restrictions and conditions:

(1) No parcel, package or article shall exceed 70 pounds in weight or 108 inches in length and girth combined;

(2) Each parcel . . . shall be considered as a separate and distinct shipment;

. . .

(4) Service shall..be provided on a full territorial basis, with pickup and delivery at any and all locations in the area authorized to be served, including locations in rural areas . . . and whether requiring operation over regular or irregular routes.

Code § 56-338.65(e) (emphasis added).
■ Purolator contends that the word "exclusively" in the foregoing definition of an RPC connotes a legislative purpose to maintain a separation between contract carriers and RPCs which may not be bridged. The fallacy of that argument is demonstrated by the fact, pointed out by the SCC, that most carriers holding RPC certificates, including Purolator itself, also hold certificates as contract carriers. Such carriers engage in both businesses and are regulated by the SCC in both capacities. When acting as an RPC, they must furnish non-discriminatory area-wide service and must conform to the package weight and dimension limitations governing that business. When acting as a contract carrier, they may carry parcels of any size, and travel between such points and for

general public for compensation issued pursuant to Chapter 12 (§ 56-273 et seq.) of this title so long as such operation is conducted within the restrictions and conditions contained in § 56-338.65. It is the policy of this Commonwealth to preserve generally the procedures set forth in said Chapter 12 for the transportation for compensation of parcels, packages and articles not in a package in all cases in which the said restrictions and conditions are not strictly met. The provisions of this chapter shall not be deemed to limit the size of any parcels, packages and articles not in a package that may be transported by motor vehicle carriers who are not restricted parcel carriers.

such charges as they may negotiate with their customers, but they are then limited by the "two consignor rule."

■ The SCC has long interpreted the word "exclusively," in the above-quoted definition of an RPC, as meaning that a carrier shall be limited to the transportation of parcels meeting the statutory criteria *when engaging in business as an RPC. Application of Blanton's Package Delivery, Inc.*, 1977 Va. S.C.C. Ann. Rep. 81. The General Assembly has returned frequently to Chapter 12, and has not acted to overrule this interpretation. We therefore conclude that the General Assembly has acquiesced in the SCC's interpretation. *See Dan River* v. *Unemployment Comm.*, 195 Va. 997, 1002, 81 S.E.2d 620, 623 (1954).

Purolator concedes, as indeed it must, that the statutory scheme does not preclude the certification of one person as both a contract carrier and an RPC. Nevertheless, Purolator insists that the "exclusivity" language in the definition of an RPC and the "two-consignor rule" applicable to contract carriers, when read together, require that a contract carrier who is also certificated as an RPC must carry his contract loads and his RPC loads on separate vehicles.

■ We find no support for this proposition, either in the statutory scheme or in logic. The several subchapters of Chapter 12 regulating specialized motor carriers are concerned with the supervision and control of different types or classifications of *businesses*, in order that each will be conducted in a manner best suited to serve the public interest. They are not aimed at the identities of the *persons* who engage in those businesses. Consequently, there is no prohibition against a single person obtaining a certificate to engage in two or more of the controlled businesses. The statutory scheme insures only that each controlled *business* will be conducted according to the statutory criteria and the regulations imposed by the SCC, applicable to that kind of business.

■ The statutory scheme requires only that when a certificated contract carrier engages in the business of transporting property "under special and individual contracts or agreements" with consignors, he may carry only two such consignor's loads on any one vehicle outside the corporate limits of any city or town. If he also holds a certificate as an RPC, he may carry additional loads on the same vehicle, but all such additional loads must conform to the limitations and requirements imposed on the RPC

business by Title 56, Chapter 12.5, and the regulations of the SCC governing the RPC business.

The General Assembly has not required that a person who holds certificates to act both as a contract carrier and as an RPC must maintain separate fleets of vehicles to engage in each of those two businesses, and we fail to see any logical reason why such a requirement should be read into the statutes by implication. It would do nothing to advance the legislative purpose of insuring inexpensive, efficient, and reliable service to the public.

Accordingly, the order appealed from will be

*Affirmed.*

GORDON, Retired Justice, dissenting.

The Commission in this proceeding certified Clemons as a restricted parcel carrier. Previously certified as a contract carrier, Clemons is authorized to transport property both as a contract carrier and a restricted parcel carrier. I have no quarrel with this.

Further, the Commission authorized Clemons to commingle in one motor vehicle both contract carrier consignments and restricted parcel consignments. The authorization applies throughout the State and without regard to the number of shippers using the restricted parcel service at the same time. This flies in the face of the clear and explicit two-consignor limitation contained in Code § 56-289:

> A contract carrier of property may not transport on any one motor vehicle over any highway of this State, outside of the corporate limits of any city or town, property of more than two consignors at the same time . . .*

No other statute lifts the two-consignor limitation.

When a carrier transports property as a contract carrier, it acts as a contract carrier. This is true even though the carrier may act at the same time as a restricted parcel carrier. The limitation of § 56-289 therefore applies to commingled consignments.

The Commission found its action to be in the public interest, and this Court agrees. But the prerogative is not with the Com-

---

* The statute defines "consignors" for its purposes as bona fide owners of the property at the time of shipment.

mission or this Court. The General Assembly, which has the prerogative, has declared the public interest by enacting Code § 56-289. Until the General Assembly lifts the two-consignor limitation, the Commission should honor it.

In granting a certificate to Clemons in this case, the Commission pointed out its past practice of granting similar certificates. But the Commission's violation of a statute cannot operate to amend the statute.

THOMAS, J., joins in dissent.